# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

Nos. 98-2219 and 99-1164

Keith D. Snyder, Appellant/Petitioner,

v.

Hershel W. Gober,
Acting Secretary of Veterans Affairs, Appellee/Respondent.

Patrick D. McCreary, Intervenor.

On Appeal from the Board of Veterans' Appeals

On Petition for Extraordinary Relief

(Decided October  6, 2000   )

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the pleadings for the appellant/petitioner.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Michael A. Leonard*, Deputy Assistant General Counsel; and *Edward v. Cassidy, Jr.*, all of Washington, D.C., were on the pleadings for the appellee/respondent.

*Patrick D. McCreary*, pro se.

Before KRAMER, STEINBERG, and GREENE, *Judges*.

STEINBERG, *Judge*: Before the Court are two cases now consolidated: (1) An appeal of a November 25, 1998, Board of Veterans' Appeals (BVA or Board) decision that (A) denied eligibility for direct payment of attorney fees to attorney Keith D. Snyder (the attorney) by the Secretary from past-due benefits awarded to his client, veteran Patrick D. McCreary, as to the veteran's successful claim for Department of Veterans Affairs (VA) service connection for a neuropsychiatric disorder and (B) reduced to $0, as unreasonable, attorney fees, called for in the fee agreement for representation before VA, as to the restoration of a 40% rating for a low-back disorder and for a rating for total disability based on individual unemployability (TDIU) (Record (R.) at 3); and (2) a

petition (as amended) for extraordinary relief in the nature of mandamus for the Court to order direct payment by the Secretary of attorney fees from past-due benefits awarded to the veteran for representation carried out before this Court. Also before the Court in the appeal case is the Secretary's motion seeking Court review of the fee agreement for the attorney's representation before the Court in connection with *McCreary v. Derwinski*, 1 Vet.App. 618 (1991) (table). For the following reasons, the Court will vacate the BVA decision, deny the petition, and deny the Secretary's motion.

## I. Background

In June 1989, the veteran filed a claim for a rating above 40% for a service-connected lumbosacral strain. *See* R. at 27. In December 1989, the Cleveland, Ohio, VA Regional Office (RO) denied that claim and reduced the veteran's rating to 20%, effective in March 1990; that decision was based on a May 1989 VA medical center (VAMC) treatment report and a November 1989 VAMC examination report that reported that the veteran had quit several jobs because of his back pain. R. at 18-19. In January 1990, the veteran filed a Notice of Disagreement (also signed by his mother) as to that decision and stated, inter alia, that "his nerves [were] very bad because of the pain he is in". R. at 21-22. A February 1990 Statement of the Case (SOC) listed as evidence, inter alia, the May 1989 VAMC report that had noted that the veteran had "not worked since 1985". R. at 27. In his March 1990 Substantive Appeal to the Board (also signed by his mother), the veteran stated that his back condition kept him from "holding down a job" and that his nervous condition, for which he had been prescribed medication, was caused by his back pain. R. at 31.

In a December 28, 1990, BVA decision, the Board denied a claim for an increased rating above 20% for a lumbosacral strain. R. at 41. The Court notes that the BVA decision was actually precipitated by a claim for a rating increase (above 40%) and involved an appeal of a rating reduction (from 40% to 20%) that had been imposed by the December 1989 RO decision (R. at 18-19). *Cf. Peyton v. Derwinski*, 1 Vet.App. 282, 286 (1991) ("[t]his is a rating-reduction case, not a rating-increase case"); *see also Dofflemyer v. Derwinski*, 2 Vet.App. 277, 279-80 (1992).

On March 27, 1991, the veteran appealed pro se to this Court the December 1990 BVA decision (R. at 41). *See McCreary*, *supra*. In May 1991, the veteran entered into a fee agreement

2

with the attorney for representation before VA on the veteran's "claim for veterans benefits before [VA]". R. at 43-44. In June 1991, the attorney filed with this Court an appearance as counsel for the veteran in that appeal to the Court and filed a fee agreement, also dated May 29, 1991, as to that representation. Each fee agreement provided for a contingency fee of 20% to be withheld and paid directly to the attorney by the Secretary from any past-due benefits awarded to the veteran "following execution of this agreement". R. at 43; Petition, Exhibit 2 at 1; Secretary's June 29, 1999, Motion, Attachment at 1. The attorney apparently also filed those fee agreements with a VARO in June 1991. *See* R. at 62, 65, 137, 157. In October 1991, the parties filed with this Court a joint motion for remand (R. at 46-49) and the Court granted that motion and vacated the December 1990 BVA decision and remanded the matter (R. at 51). That joint motion for remand requested that the Court direct the Board (1) "to obtain further development of the evidence . . . to determine the nature and degree of the [veteran's] disability and [to] issue a new final decision"; (2) "to remand the [veteran's] claim for increased rating due to [TDIU] raised in his [S]ubstantive [A]ppeal . . . and [to] direct the RO to assist the [veteran] in developing a claim for increased rating due to [TDIU] or any other benefits that [the veteran] may be entitled to by reason of the evidence then of record"; and (3) "to consider the effect of pain on the [veteran's] disability." R. at 47-48.

On remand from the Court, the Board characterized the issues as follows: (1) "Restoration of a 40 percent evaluation for lumbosacral strain, currently evaluated 20 percent disabling"; (2) "Increased evaluation, in excess of 40 percent, for lumbosacral strain, currently evaluated 20 percent disabling"; and (3) "Total disability evaluation based on individual unemployability due to service-connected disability". R. at 55. In January 1992, the Board remanded those claims to the RO. R. at 58-59. In an April 1993 decision, the RO denied those three claims (R. at 73-79), and in May 1993 the RO issued a Supplemental SOC (SSOC) as to those three claims (R. at 83). In June 1993, the attorney notified the veteran that he did "not want to continue pursuing this" matter on behalf of the veteran and that he was "returning [the veteran's] VA records" to him. R. at 152.

In a December 1993 BVA decision, the Board noted that the veteran had raised a fourth claim, one for service connection for a psychiatric disorder, as secondary to the service-connected lumbosacral-strain claim, and remanded that matter for further development. R. at 99-102. After further development of the evidence (*see* R. at 105, 111-12), the RO denied those four claims and

3

issued an additional SSOC.  R. at 105-07, 110-20.  In August 1995, the BVA remanded the psychiatric, rating-restoration, and rating-increase claims for additional VA examinations and deferred its decision on the TDIU claim until development of those three "inextricably intertwined" claims was complete.  R. at 126-30.  In February 1998, the RO granted a rating increase to 40% for lumbosacral strain, effective on March 1, 1990; awarded service connection for chronic dysthymic (depressive) disorder, assigning a rating of 50%, effective on April 5, 1990; and awarded a TDIU rating, effective on October 16, 1991.  R. at 132-35.

In a March 1998 letter to the attorney, of which a copy was sent to the veteran, the RO acknowledged receipt of the fee agreement for the attorney's representation of the veteran and notified him that "payment of attorney fees from past-due benefits is subject to review by the Board".  R. at 137-42.  In April 1998, the RO notified the veteran that it had awarded him a lump-sum amount of $136,951.00 in past-due benefits for the three awards, paid him $109,560.80, and withheld $27,390.20 as a "potential 20% contingent fee" to be paid directly to the attorney by the Secretary.  R. at 144-46.  In that notification letter, the RO notified the veteran that his case was being transferred to the Board for a "determination of eligibility for payment of attorney fees from any past-due benefits." R. at 146.  The veteran thereafter asked the Board for an explanation as to why the 20% had been withheld in light of the fact that the attorney had resigned from the case.  R. at 151-52.  In an August 1998 letter, the Board notified the attorney and the veteran that it was considering a reduction of the attorney's fee on the ground that the attorney had not "engaged in any representational activity on behalf of [the veteran] before VA after August 1993"; that he and the veteran had the right to submit argument and evidence as to that matter; and that the Board's determination would cover only the fee agreement for representation before VA because the Board did not have jurisdiction over fee agreements for representation before the Court.  R. at 154-55.  In September 1998, the attorney responded, arguing, in essence, that the fee agreement for representation before the Court provided a basis for the direct payment of the full 20% withheld.  R. at 157-59.  The veteran also responded to the Board, asserting that the attorney should not be paid the withheld 20%.  R. at 161-64.

In a November 25, 1998, BVA decision as to eligibility for payment of attorney fees from past-due benefits and the reasonableness of any underlying fee agreement, the Board (1) denied

4

eligibility for payment of attorney fees from past-due benefits as to the neuropsychiatric-disorder claim and (2) reduced to $0, as unreasonable, attorney fees, called for in the fee agreement for representation before VA, as to the restoration of a 40% rating for a low-back disorder and for a TDIU rating. R. at 3. (The Board mixed up these actions when it summarized them at the end of its decision. *See* R. at 14.) Although the Board noted that the attorney had "asserted that VA ha[d] the authority to pay the fee for services he had rendered the veteran while representing him before the Court", the Board concluded that it "may review only the contract for services before VA" and that "[r]eview of [fee] agreements [for representation before the Court] is exclusively within the province of the Court." R. at 3, 6.

On December 2, 1998, the attorney appealed that BVA decision through other counsel. On June 29, 1999, the Secretary filed a motion in that appeal, seeking Court review of the fee agreement for the attorney's representation before the Court in connection with the October 1991 Court remand in *McCreary*, *supra*. As a basis for his motion, the Secretary asserts that the Court's review of the reasonableness of the fee agreement "may result in a prompt, favorable determination for the appellant which would moot this appeal and conserve judicial resources"; the Secretary cites *In the Matter of the Fee Agreement of Mason*, 13 Vet.App. 79, 86 (1999) (*Mason Fee Agreement*) (holding that "where attorney successfully represents a VA claimant before this Court . . . , the Secretary is obligated [under certain circumstances] to pay directly to the attorney 20% of the past-due benefits awarded on the basis of the claim or application for benefits *underlying the issues successfully appealed to this Court*"). Motion at 2-3. On July 12, 1999, the attorney filed a response opposing the Secretary's motion on the grounds that the Court lacks jurisdiction to review the fee agreement because there is no BVA decision as to that agreement and that the Secretary has alleged no error in the fee agreement for representation before the Court and the motion is, therefore, a request for an advisory opinion from this Court.

Also on July 12, 1999, the attorney filed through counsel a petition for extraordinary relief in the nature of mandamus, seeking a Court order (1) that the Secretary show cause as to why he has failed to pay to the attorney the withheld attorney fees; and (2) either (A) that the Secretary make immediate payment of the withheld attorney fees or (B) that the Board direct the RO to make a decision so that the attorney may file a Notice of Disagreement (NOD) as to his entitlement to direct

payment of a 20%-contingency fee for his successful representation of the veteran in this Court. On July 28, 1999, the Court ordered the Secretary to file a response to the petition. The Secretary has filed a response, and the attorney has filed a reply. On October 1, 1999, the Court consolidated the appeal and petition cases and submitted them to this panel.

On October 18, 1999, the attorney filed an amended petition for extraordinary relief and attached a copy of an October 1, 1999, letter to the veteran from the RO. That letter stated:

> A check, dated September 17, 1999, in the amount of $27,390.20 was issued to you. You confirmed on September 23, 1999, that you had received and negotiated this check.
>
> There is a motion before the United States Court of Appeals for Veterans Claims petitioning for payment of attorney fees to Keith D. Snyder, Attorney at Law. The $27,390.20 represents past-due benefits that are potentially payable to the attorney.
>
> We require that you return the $27,390.20. ***These funds do not belong to you.*** The issue of payment of attorney fees from past-due benefits is still in litigation. If the Court determines that Mr. Snyder is not entitled to payment of these funds, they will be refunded to you at that time. ***Your cooperation will greatly assist in the litigation process.***

Amended Petition, Exhibit 1 (emphasis added). (There is no indication that the veteran has returned any such funds to VA.)

In the October 1999 amended petition, the attorney requests relief based on the "inexplicable action" by the RO in paying to the veteran the previously withheld 20% of the veteran's past-due benefits; specifically, he requests that the Court (1) order the Secretary to show cause as to why he released the previously withheld 20%; (2) find that the payment to the veteran of that 20% was "an act of 'bad faith' by the Secretary"; (3) consider sanctions against the Secretary for that payment; (4) "direct the Secretary to create an overpayment in the veteran's account"; and (5) order the Secretary to pay that 20% to the attorney or order the Secretary to show cause why a writ should not be issued.

On December 23, 1999, the Court, inter alia, granted intervenor status to the veteran. *Snyder v. West*, 13 Vet.App. 244, 248-49 (1999) (per curiam order). On February 10, 2000, the Secretary filed a motion to stay proceedings in this case pending this Court's decision in *Scates v. West*, 13 Vet.App. 304, 305 (2000) (en banc order granting motion for en banc decision), and on April 11,

2000, the Court granted that motion and stayed the matter pending the outcome of *Scates* and accepted for filing a brief that the attorney had submitted on March 3, 2000, as to the appeal. *Snyder v. West*, 13 Vet.App. 416, 417 (2000) (per curiam order). In that brief (Brief at 22, 41), the attorney submits numerous arguments and makes reference to the Secretary's reliance on VA General Counsel Precedent Opinion 27-92 (Dec. 9, 1992) [hereinafter G.C. Prec. 27-92] in *In the Matter of the Fee Agreement of Cox*, 10 Vet.App. 361 (1997) (*Cox Fee Agreement II*), *vacated in part on other grounds sub nom. Cox v. West*, 149 F.3d 1360 1363, 1365-66 (Fed. Cir. 1998) (affirming all holdings; vacating only for consideration of asserted facts occurring after this Court's opinion), for the proposition that he could not pay the attorney pursuant to a direct-pay contingency-fee agreement where the Secretary had already paid "the complete amount of past-due benefits . . . to the claimant." *Id.* at 365 (quoting G.C. Prec. 27-92).

On August 14, 2000, the Court issued a unanimous en banc opinion in *Scates v. Gober*, __ Vet.App. __, No. 97-875, 2000 WL 1141097 (Aug. 14, 2000) (en banc). Hence, the Court now lifts the stay and proceeds with this appeal and petition. Because *Scates* is dispositive of the appeal and *Mason Fee Agreement* and other authority are dispositive of the petition, because counsel for the attorney was counsel for Mr. Mason in both *Scates* and *Mason Fee Agreement*, because these matters have been pending before the Court now for well over a year (petition) and almost two years (appeal), and because the Court's opinion today will vacate the BVA decision on appeal and direct the Board to dismiss the matter referred to it by the RO and will deny the petition in order for the matters to proceed before the Cleveland RO, the Court does not believe that further pleadings are needed. Any further pleadings may be filed at the RO or the Board, as necessary, by any of the parties, and no one's rights are adversely affected by our action today as to the merits of the fee-agreement issues.

## II. Analysis

### A. Appeal from BVA Decision

The *Scates* case involved, as does the instant appeal, "a direct-payment contingency-fee agreement", as to which "the agency of original jurisdiction [(i.e., the RO)] never made a decision concerning the award of the withheld attorney fees to the intervenor under [38 U.S.C. §] 511(a)" and,

7

instead, "the RO forwarded the matter to the Board for 'a determination of eligibility.'"  *Scates*, __ Vet.App. at __, 2000 WL 1141097, at \*2; R. at 146.  The Court held in *Scates* that the determination of entitlement or eligibility for attorney fees under direct-payment contingency-fee agreements must first be addressed by the RO.  *Scates*, *supra*.  Accordingly, the Court will vacate the appealed November 1998 BVA decision "for want of original jurisdiction to decide eligibility for direct payment of a withheld contingency fee under [section] 5904(d)" and remand the matter "to the Board with directions to dismiss that matter as referred to the Board by the RO." *Scates*, *supra*. Just as the Court noted in *Scates*, the matter of the Secretary's direct payment of attorney fees in this case "remains pending before the Secretary by virtue of the fee agreement[s] filed in this case", *ibid.*, and all parties will be able to raise any issues they wish before the RO.

### B. Petition for Writ of Mandamus

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States District Court*, 426 U.S. 394, 402 (1976).  Before a court may issue a writ, a petitioner must demonstrate (1) a clear and indisputable right to the writ and (2) a lack of adequate alternative means to obtain the relief sought. *See Cox Fee Agreement II*, 10 Vet.App. at 370 (holding that this Court has authority, in appropriate circumstances, to issue writs under All Writs Act, 28 U.S.C. § 1651(a)).  Hence, a petitioner must satisfy both prongs in order to obtain extraordinary relief.  *See Herrmann v. Brown*, 8 Vet.App. 60, 62 (1995) (applying *Kerr* "two prong test"); *Erspamer v. Derwinski*, 1 Vet.App. 3, 9 (1990) (same).

The statutory provision governing fee agreements is section 5904, which provides:

> (d) (1) When a claimant and an attorney have entered into a fee agreement described in  paragraph (2) of this subsection, the total fee payable to the attorney may not exceed 20 percent of the total amount of any past-due benefits awarded on the basis of the claim.

> (2) (A) *A fee agreement* referred to in paragraph (1) *is one under which the total amount of the fee* payable to the attorney--

>> (i) *is to be paid to the attorney* by the Secretary directly from any past-due benefits awarded on the basis of the claim; and

>> (ii) is contingent on whether or not the matter is resolved in a manner favorable to the claimant.

(B) For purposes of subparagraph (A) of this paragraph, a claim shall be considered to have been resolved in a manner favorable to the claimant if all or any part of the relief sought is granted.

(3) To the extent that past-due benefits are awarded in any proceeding before the Secretary, the Board of Veterans' Appeals, or the United States Court of Appeals for Veterans Claims, *the Secretary may direct* that payment of any attorneys' fee under a fee arrangement described in paragraph (1) of this subsection be made out of such past-due benefits. In no event may the Secretary withhold for the purpose of such payment any portion of benefits payable for a period after the date of the final decision of the Secretary, the Board of Veterans' Appeals, or Court of Appeals for Veterans Claims making (or ordering the making of) the award.

38 U.S.C. § 5904(d) (emphasis added).

The implementing regulation provides in pertinent part:

(1) Subject to the requirements of the other paragraphs of this section, . . . the claimant or appellant and an attorney-at-law may enter into a fee agreement providing that payment for the services of the attorney-at-law will be made directly to the attorney-at-law by the Department of Veterans Affairs out of any past-due benefits awarded as a result of a successful appeal to the Board of Veterans' Appeals or an appellate court or as a result of a reopened claim before the Department following a prior denial of such benefits by the Board of Veterans' Appeals or an appellate court. Such an agreement *will be honored* by the Department only if the following conditions are met . . . .

38 C.F.R. § 20.609(h) (1999) (emphasis added).

The petition and amended petition together request eight elements of relief, which break down, in effect, into six requests for relief: (1) Direct payment of attorney fees; (2) an RO decision as to direct payment of attorney fees; (3) a determination that payment to the veteran of the withheld 20% was made in "bad faith"; (4) sanctions against the Secretary for erroneous payment to the veteran of the withheld 20%; (5) creation of an overpayment in the veteran's account for payment to him of the withheld 20%; and (6) a contempt order against the Secretary for failure to pay attorney fees directly. The Court will first discuss the fifth request and will group the third, fourth, and sixth elements into a single discussion.

*1. Petition for Creation of Overpayment.* The attorney petitions the Court for a writ of mandamus to require the Secretary to create an overpayment and an offset pursuant to 38 U.S.C. § 5314 against the veteran as to the 20% previously withheld but later erroneously disbursed to the

veteran. This requested relief is premised on the Secretary's historic reliance on the G.C. Prec. 27-92 (*See Cox Fee Agreement II*, 10 Vet.App. at 365) holding that the Secretary cannot pay an attorney pursuant to a direct-pay contingency agreement where the Secretary has already paid the complete amount of past-due benefits to the claimant client. As set forth above, of course, in order for such a writ to be issued the petitioner must show both that he has an indisputable right to the writ and that no alternative is available to obtain the relief sought. *See Cox Fee Agreement II*, *supra*. If the General Counsel's holding is correct and there is a bar to the right of the attorney in this case to receive direct payment of attorney fees from VA because of VA's wrongful disbursement to the veteran of funds that were to be withheld pursuant to such an agreement, there may be a right to the relief requested. With such relief, payment to the attorney could be made out of funds recouped by VA from the veteran without forcing the attorney to wait for the offset to begin until the outcome of the *Scates* remand in this case.

As to the second prong that a petitioner must demonstrate to obtain an extraordinary writ -- lack of adequate alternative means to obtain the relief sought -- it is not clear exactly what remedy might be available from VA to a VA claimant such as the attorney here who seeks to have an overpayment declared by VA against a VA-benefits recipient. *Cf. Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000) ("[i]f exhaustion [of administrative remedies] will result in prejudicial delay to the individual, or if there is 'some doubt as to whether the agency was empowered to grant effective relief,' [*McCarthy v. Madigan*, 503 U.S. 140, 146-48 (1992)], the doctrine [of exhaustion] should not be invoked"). Hence, we turn initially to the first prong. The Court will deny the relief sought because the petition fails on the first prong -- the petitioner has not, for the following reasons, demonstrated an indisputable right to the creation of such an overpayment. A writ must be denied as to this element of the extraordinary relief sought because we hold that the Secretary is already obliged, if the statutory and regulatory requirements are met, to pay attorney fees in an appropriate amount directly to the attorney without regard to any recoupment of any overpayment to the veteran. We note at this point that we make no determination as to whether the attorney would be entitled to the full 20% (or any portion thereof) of the past-due benefits total awarded for all three claims. *See Mason Fee Agreement*, 13 Vet.App. at 86 (holding that direct payment of attorney fees for

10

representation before the Court is to be made "on the basis of the claim or application for benefits *underlying the issues successfully appealed to this Court*").

   *a. Interpretation of statutory provision:* The first question in determining whether a writ may be issued directing the creation of an overpayment is whether the Secretary is obliged by statute or by regulation to withhold 20% of the veteran's past-due benefits and to pay an appropriate amount of attorney fees directly to the attorney if the statutory and regulatory requirements are met. We would normally begin with the statute. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984). A determination as to the plain meaning of a statute necessarily requires an examination of the specific language in question within the overall structure of the statutory scheme. *See Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd* 513 U.S. 115 (1994); *see also Smith (William) v. Brown*, 35 F.3d 1516, 1522-23 (Fed. Cir. 1994).

   Section 5904(d) provides in paragraph (3) that "the Secretary may direct that payment of any attorney's fee under a fee arrangement described in paragraph (1) . . . be made out of . . . past-due benefits" that "are awarded in any proceeding before the Secretary, the Board of Veterans' Appeals, or the Court of Appeals for Veterans Claims", and paragraph (2)(A) provides that "a fee agreement referred to in paragraph (1) is one under which the total amount of the fee payable to the attorney . . . is to be paid to the attorney by the Secretary directly from any past-due benefits awarded on the basis of the claim". 38 U.S.C. § 5904(d)(3), (2).

   Among other things, section 5904(d) is an exception to the assignment-of-VA-benefits statutory prohibition, which provides: "Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law . . . ." 38 U.S.C. § 5301(a); *see Aronson v. Derwinski*, 3 Vet.App. 162, 164 (1992) (section 5301(a) "does not constitute a limitation on the Secretary's obligation" under 38 C.F.R. § 20.609(h) to pay attorney fees directly); *see also Wingo v. West*, 12 Vet.App. 305, 306 (1999) (section 5301(a) prohibits assignment of past-due benefits except that Secretary may withhold VA benefits for purpose of payment of attorney fees under specific conditions). By providing "except

11

to the extent specifically authorized by law", the language of section 5301(a) clearly contemplated the possibility of the enactment of a statutory exception. 38 U.S.C. § 5301(a). Such an exception could be enacted by language either directing or permitting the Secretary to assign VA benefits.

A review of the legislative history made in the committees' explanatory statement on the legislation that became the Veterans' Judicial Review Act (VJRA), Pub.L. 100-687, 102 Stat. 4105-22 (1988), and the Senate floor manager's remarks reveals either ambiguity on this point (being unclear whether the Secretary must pay or whether the fee agreement must so provide, *see* 134 Cong. Rec. 31,473, 31,474 (1988) (Explanatory Statement on the Compromise Agreement on S. 11, As Amended, the "Veterans' Judicial Review Act"); 134 Cong. Rec. 31,461 (1988) (statement by Senator Cranston)), or some suggestion that the authority is permissive (*see* 134 Cong. Rec. at 31,475; 134 Cong. Rec. 31,461 (statement of Senator Cranston)). None of this history, however, contains any ***express*** declaration on the mandatory versus discretionary point. In 1998, the Senate-passed bill, S. 11, 100th Cong. (1988), that became the VJRA originated the past-due-benefits withhold-and-pay provision and expressly made that authority mandatory ("the Administrator shall direct that payment . . . be made"). S. Rep. No. 100-418, at 19-20 (1988) (setting forth reported bill). The Senate Committee report described that provision as mandatory ("the Administrator is required to direct payment"). *Id.* at 69. The House-passed bill, H.R. 5288, 100th Cong. (1998), had no comparable provision regarding direct VA payment out of past-due benefits. There is no explanation in the committees' explanatory statement on the compromise legislation as to why the "shall" was changed to "may" by the committees and then by Congress in the compromise agreement adopted as the VJRA and now contained in 38 U.S.C. § 5904(d)(3). VJRA, Pub. L. No. 100-687, § 104(a), 102 Stat. at 4108.

As the Court concludes in *Cox v. Gober*, __ Vet.App. __, __, Nos. 95-1068 and 99-1250, slip op. at 6 (Oct. 6, 2000) (per curiam) (*Cox III*), issued concurrently today by the Court, there might be room for disagreement as to whether section 5904(d) standing alone requires, or merely gives discretion to, the Secretary to carry out the withhold-and-pay provisions of the statute. *Compare In the Matter of Fee Agreement of Smith*, 4 Vet.App. 487, 493-94 (1993) (concluding that 38 U.S.C. § 5904(d) is mandatory requiring the Secretary to comply with the withhold-and-pay provisions of that statute), *vacated on other grounds sub nom. In the Matter of Fee Agreement of Wick*, 40 F.3d

367 (Fed. Cir. 1994) (*Wick Fee Agreement*), *with In the Matter of Fee Agreement of Smith*, 1 Vet.App. 492, 504-05 (1991) (Steinberg, J., concurring) (concluding that section 5904(d) is discretionary, but that the then-pending regulation, 38 C.F.R. § 20.609(h), would make the Secretary's obligation to honor section 5904(d) agreements mandatory).

*b. Secretary's obligations under implementing regulation*: However, there can be no doubt and we conclude, as did the Court in *Aronson*, *supra*, and as does the Court in *Cox III* today, that the Secretary is obliged by his own regulation to pay the attorney under a withhold-and-pay contingency-fee agreement if the statutory and regulatory requirements are met. That is because the Secretary is no less obligated to take a particular action when the duty is created by regulation pursuant to express statutory authorization than when it is created by statute. The law is clear that an agency is bound to follow its own regulations as long as they are in force. *See Vitarelli v. Seaton*, 359 U.S. 535, 539-40 (1959); *Service v. Dulles*, 354 U.S. 363, 383-89 (1957); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265-68 (1954); *Schafrath v. Derwinski*, 1 Vet.App. 589, 592 (1991) (Board not free to ignore regulation adopted by VA); *see also Grivois v. Brown*, 6 Vet.App. 136, 140 (1994) (citing *Vitarelli*, *supra*, for proposition that procedures must be provided to all similarly situated VA claimants).

In this connection, we stress that the Secretary's obligation and the attorney's right **do** derive from the statute. Without such express statutory sanction, the Secretary, as noted in Part II.B.1.a. above, would be prohibited by the anti-assignment provision of 38 U.S.C. § 5301(a) from honoring any such direct-payment fee-agreement provision. Hence, the attorney's right is directly dependent on the statutory authority in section 5904(d) and would not exist without that statutory provision.

The Secretary has the full authority, indeed the obligation, to pay the attorney out of VA's entitlement account (the compensation and pension account) just as it does to pay any other VA claimant out of that account, which is routinely funded by deficiency appropriation when the amount appropriated to that account in any fiscal year proves inadequate come the end of a fiscal year, *see*, *e.g.*, 54 Comp. Gen. 393, 395 (1974) ("should applicable appropriation be exhausted, a deficiency appropriation would be necessary prior to payment of additional claims"). Where VA makes an erroneous payment to a particular beneficiary from the compensation and pension account, that in no way impairs its authority and obligation to pay from that fund the amount that is owed to the

13

correct beneficiary. Whether or not the Secretary decides to seek to recoup the erroneous payment is an entirely different matter. *See* 38 U.S.C. § 5314 (providing Secretary with authority to "deduct the amount of the indebtedness of any person who has been determined to be indebted to the United States by virtue of such person's participation in a benefits program administered by the Secretary from future payments made to such person under any law administered by the Secretary"). The Secretary's historic reliance on G.C. Prec. 27-92 (December 9, 1992) (concluding that "VA has no legal authority to pay attorney fees when payment of the complete amount of past-due benefits has been made to the claimant") is plainly in conflict with the binding opinions of the Comptroller General discussed below, and hence is invalid. *See Cox III*, __ Vet.App. at __, slip op. at 9 ("G.C. Prec. 27-92 is plainly in conflict with the binding opinions of the Comptroller General and therefore cannot stand").

The bottom line is that the erroneous payment's existence is immaterial to the Secretary's responsibility to make the payment to which there is lawful entitlement. This principle is firmly embedded in the decisions of the Comptroller General of the United States. *E.g.*, 2 Comp. Gen. 102, 106 (1922) (where Veterans' Bureau made erroneous payment to person not entitled thereto and where another person is clearly entitled to that payment, it is the "duty" of the Director of Veterans' Bureau to "make payment to the rightful claimant . . . irrespective of recovery by the government of the amount erroneously paid . . . even though it involves the government in a double payment, provided, of course, there has been no contributing negligence or other fault chargeable to the person claiming the payment"); *see also* 66 Comp. Gen. 617, 619 (1987) (same, as to payment to Army construction contractor); 37 Comp. Gen. 131, 133 (1957) (same, as to payment of death gratuity under Servicemen's and Veterans' Survivor Benefits Act); 19 Comp. Gen. 104, 105 (1939) (same, as to Social Security Act payment).

Accordingly, the Court holds that, if the fee agreement has met the statutory and regulatory requirements, the Secretary is required to make payment to the appellant in this case of any portion of the 20% to which he is found to be entitled. See *Cox III*, __ Vet.App. at __, slip op. at 10; *see also Mason Fee Agreement*, 13 Vet.App. at 86. Hence, because there is no connection between any overpayment by the Secretary to the veteran and any contingency fee that the Secretary might under the circumstances here be obligated to pay directly to the attorney, the attorney, "who carries the

14

burden in this matter, has not adequately established a clear and indisputable right to a writ", *Costanza v. West*, 12 Vet.App. 133, 134 (1999) (per curiam order), as to that specific relief sought, and the Court may not order such mandamus relief. *See Cox Fee Agreement II*, 10 Vet.App. at 370. We note in this regard that, because we have held that the attorney has not established a clear and indisputable right to a writ ordering the Secretary to create an overpayment against the veteran, the petition for such a writ must fail and we need not address whether the attorney also lacks an adequate alternative means to obtain the specific relief (overpayment declaration) sought. *See Ebert v. Brown*, 4 Vet.App. 434, 437 (1993); *cf. Maggitt*, *supra*.

   *2. Petition for RO decision.* Regarding the attorney's petition that the Court order the RO to issue a decision as to his direct-payment claim, the Board concluded that it did not have jurisdiction to consider the fee agreement for representation before the Court, albeit for a reason different from that given by the Court in in part II.A. of this opinion. R. at 6. Nonetheless, as concluded in part II.A., above, the Court is directing the Board to send the direct-payment claim back to the RO as to representation before both VA and the Court. Hence, that claim will then be pending before the RO, as to **both** fee agreements.

   The attorney can obtain direct payment from the Secretary of only a total of 20% of the past-due benefits for all of his representation of the veteran (whether before the Court or VA). *See In re Fee Agreement of Smith*, 7 Vet.App. 92, 92 (1994) (en banc order denying en banc review) (*Smith Fee Agreement*) (Steinberg, J., dissenting); *Smith I*, 1 Vet.App. at 509-10 (Steinberg, J., concurring). If the attorney were fully successful as to one of the fee agreements, it would become unnecessary for him to pursue VA action as to the other fee agreement. The Court also notes that prior to *Mason Fee Agreement*, *supra*, it would appear that recourse to the RO would have been futile, as the BVA decision concluded (R. at 6). *See Cox Fee Agreement II*, 10 Vet.App. at 375 ("[i]t is well-settled under [the All Writs Act, 28 U.S.C. § 1651(a),] that a petitioner need not pursue an alternative remedy that is futile"). In *Mason Fee Agreement*, however, the Court remanded to the Board the question whether as to a particular claim (for a TDIU rating) the 20% of past-due benefits were owed to the attorney in connection with his representation before this Court. The Court's remand of that matter established that the Secretary has jurisdiction to consider that matter, and, consistent with *Scates*, *supra*, such a question should first be considered by the RO.

The attorney, "who carries the burden in this matter," has provided "no evidence establishing that letters, telephone calls, visits to appropriate authorities, or other efforts have been undertaken" to seek a decision by the RO. *Costanza v. West*, 12 Vet.App. 133, 134 (1999) (per curiam order). Hence, he is not entitled to extraordinary relief because the exhaustion of his remedies may secure the relief he ultimately seeks, and, if not, he has the remedy of timely appeal as of right to this Court. *See Cox Fee Agreement II*, 10 Vet.App. at 374 ("[a] petitioner who has administrative alternatives and who loses them by failing to pursue them is not entitled to a writ of mandamus") (citing *Anderson v. Comm'r of Internal Revenue*, 693 F.2d 844, 846 (9th Cir. 1979)). Accordingly, the Court holds that the attorney has not yet exhausted his administrative remedies (by seeking an RO decision subsequent to *Mason Fee Agreement*), and the Court will therefore deny the instant petition as to his request for a Court order directing the RO to make a decision as to this matter. The Court notes that after the RO has made its decision on any aspect of this direct-payment claim (including the reasonableness of the fee on the facts of this case), if either the attorney or the veteran disagrees with that decision, he may then file an NOD as to that RO decision. *See* 38 U.S.C. § 7105A (provision for filing NOD in simultaneously contested claims).

**3. *Petition for Direct Payment by Secretary.*** The attorney requests that the Court order the Secretary to pay the attorney fees to the attorney for his representation before this Court. The Court concludes, however, that the attorney has not shown that he has no adequate alternative remedy as to that payment. *See* part II.B.2., above.

**4. *Petitions for Sanctions, Contempt Order, and "Bad Faith" Determination against Secretary.*** The Court will deny the attorney's requests for sanctions, a contempt order, and a determination that the Secretary acted in "bad faith". We do so on the ground that, although the Secretary erred in paying out the previously withheld 20%, that erroneous payment does not affect the attorney's right to direct payment of attorney fees in an appropriate amount under the fee agreement for representation before the Court if the statutory and regulatory requirements are met. *See* part II.B.1., above.

### C. Review of Fee Agreement for Representation Before Court

The Secretary requests in connection with this appeal that the Court review the fee agreement for representation before the Court. There are three circumstances under which this Court may

review a fee agreement. First, pursuant to 38 U.S.C. § 5904(c), the Court may review a finding or order of the Board as to a fee agreement for services before VA, as long as that BVA finding or order has been timely appealed to this Court. *See* 38 U.S.C. § 5904(c)(2); 38 U.S.C. § 7263(d); *Smith I*, *supra* (Steinberg, J., concurring). That avenue of review is a basis for jurisdiction only where the reasonableness or excessiveness of the fee is in dispute, *see Cox v. West*, 149 F.3d at 1364, and where the fee agreement to be reviewed is one for representation before VA. 38 U.S.C. § 5904(c)(2). Because the Secretary requests that the Court review the fee agreement as to representation before the Court, jurisdiction based on sections 5904(c)(2) and 7263(d), as to review of the reasonableness of a fee agreement for representation before VA, is not implicated, and the Court thus lacks jurisdiction under those sections, *see* 38 U.S.C. § 5904(c)(2); *Cox v. West*, 149 F.3d at 1364.

Second, the Court may review a fee agreement and the attendant circumstances as to a claim for payment under 38 U.S.C. § 5904(d) pursuant to a decision by the Secretary under 38 U.S.C. § 511(a). *See Cox v. West*, 149 F.3d at 1365. Because this avenue of review is based on questions arising under 38 U.S.C. § 511(a), an appellant must have filed an NOD as to an RO decision on that section 5904(d) claim, in order for the Court to have jurisdiction, *see* 38 U.S.C. §§ 7104(a), 7105(a), (c), 7252(a), 7263(c), (d); *Cox v. West*, *supra*; *Scates*, __ Vet.App. at __, 2000 WL 1141097, at *2. Because the RO has not made a decision as to this matter and there can be no NOD, the Court lacks jurisdiction under section 5904(d). *See Cox v. West* and *Scates*, both *supra*.

Third, the Court, on its own motion or the motion of either party, may review a fee agreement that a person who represents an appellant before the Court is required to file with the Court at the time that the appeal is filed. *See* 38 U.S.C. § 7263(c); *Fritz v. West*, 13 Vet.App. 190, 192 (1999); *Carpenter (Angeline) v. West*, 12 Vet.App. 52, 53 (1998), *appeal dismissed sub nom. Carpenter (Angeline) v. Gober*, __ F.3d __, No. 99-7128, 2000 WL 1456451 (Fed. Cir. Sept. 29, 2000); *Shaw v. Gober*, 10 Vet.App. 498, 502 (1997); U.S. Vet. App. R. 46(d)(2)(B). The language of 38 U.S.C. § 7263(c) presupposes that any review under this section will be limited to fee agreements in appeals that are currently pending before the Court. *See Wick Fee Agreement*, 40 F.3d at 371 (holding that section 7263 authorizes this Court to review fee agreements when appeal is properly before this Court and when fee agreement has been filed with Court at time appeal is filed); *In the Matter of the Fee Agreement of Bates*, 10 Vet.App. 547, 547-48 (1997) (dismissing petition as to fee-agreement

matter where application for attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), had been dismissed based on parties' joint motion after negotiated settlement was reached). The appeal to this Court that generated the fee agreement for services before the Court that is the subject of the Secretary's motion was disposed of in October 1991, when the Court granted the parties' joint motion for remand. *See* U.S. VET. APP. R. 41(b) ("order on consent dismissing or remanding a case will also constitute the mandate"); *McCreary*, *supra* (remand order issued October 28, 1991). Given that the *McCreary* appeal is no longer pending before the Court, that appeal cannot form the basis for the Court's jurisdiction to review the fee agreement under section 7263(c).

As to the instant petition, even if it were to provide a basis for the Court's jurisdiction to review the fee agreement for representation before the Court, as noted above, the questions of the attorney's entitlement and eligibility under section 5904 (e.g., final BVA decision, retention of attorney within one year after BVA decision, fee agreement that specifies direct payment by the Secretary, total attorney fee is contingent and amount is for no more than 20% of past-due benefits awarded) and, as to the representation in this Court, of what portion of the past-due benefits were "awarded on the basis of the claim or application for benefits *underlying the issues successfully appealed to this Court*") based on a fee agreement for representation before the Court are questions that should be considered by the RO in the first instance, *see Scates* and *Mason Fee Agreement*, both *supra*. Any review by this Court of the reasonableness of that fee agreement would be premature until entitlement and eligibility are first determined. *Cf. Smith Fee Agreement*, 7 Vet.App. at 91 (dictum stating that fee agreements for representation in this Court are "reviewable by this Court alone for reasonableness"); *but cf. id*. at 94-95 (Steinberg, J., dissenting from denial of en banc consideration). Accordingly, the Court will deny the Secretary's June 1999 motion seeking Court review of the fee agreement as to representation before the Court.

### III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the Court vacates the November 1998 BVA decision for lack of original jurisdiction to decide eligibility for direct payment of a withheld contingency fee under 38 U.S.C. § 5904(d) and remands

18

the matter to the Board with directions to dismiss the claim for direct-payment fee eligibility as referred to the Board by the RO. *See Scates*, *supra*. Upon further such consideration, because the petitioner has not demonstrated, as to any of the relief sought, both that he has a clear and indisputable right to the writ and that his administrative remedies have been exhausted, the Court denies the petition as amended. Finally, the Court denies the Secretary's June 1999 motion for Court review of the fee agreement for representation before the Court, because that matter should originate at the RO.

ON APPEAL, BVA DECISION VACATED WITH DIRECTIONS; PETITION DENIED.

DATED: