# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

Nos. 98-2219 and 99-1164

Keith D. Snyder, Appellant/Petitioner,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee/Respondent.

Patrick D. McCreary, Intervenor.

On Appellee's Motion for Reconsideration

(Decided    November 14, 2001   )

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the pleadings for the appellant/petitioner.

*Leigh A. Bradley,* General Counsel; *Ron Garvin*, Assistant General Counsel; *Michael A. Leonard*, Deputy Assistant General Counsel; and *Edward V. Cassidy*, *Jr.*, all of Washington, D.C., were on the pleadings for the appellee/respondent.

Before KRAMER, *Chief Judge*, and STEINBERG and GREENE, *Judges*.

STEINBERG, *Judge*:  In an earlier opinion, dated October 6, 2000, in this case, the Court vacated a November 25, 1998, decision of the Board of Veterans' Appeals (Board or BVA); remanded the matter to the Board with directions to dismiss the matter regarding direct-payment fee eligibility as referred to the Board by the Department of Veterans Affairs (VA) regional office (RO); denied the petitioner's amended petition for a writ of mandamus; and denied the Secretary's June 1999 motion that the Court undertake review of the fee agreement for representation before the Court, because that matter should originate at the RO. *Snyder v. Gober*, 14 Vet.App. 154, 168 (2000) [hereinafter *Snyder I*].  On November 13, 2000, the Secretary filed a motion for reconsideration or, in the alternative, for a full-Court review.

The Secretary makes the following primary arguments: (1) The Court seemed to hold in *Snyder I* that decisions of the Comptroller General are binding upon VA, and any such holding violates the constitutional separation of powers; (2) the decisions of the Comptroller General cited by the Court are inapposite to the instant case and should not be relied upon even as persuasive authority; (3) the Court failed to address the Secretary's contention that sovereign immunity prevents VA from making any payment to the appellant in this case; and (4) the Court misinterpreted its own precedent in *Scates v. Gober*, 14 Vet.App. 62 (2000) (en banc), in vacating the findings of the Board as to the eligibility and reasonableness of the fee agreement for representation before VA regarding claims for a low-back disorder and for a rating of total disability based on individual unemployability (TDIU). Motion for Reconsideration (Mot.) at 3-14. The appellant filed, on December 4, 2000, a response to the Secretary's motion and filed, on December 5, 2000, an amended response to the Secretary's motion.

For the reasons set forth below, the Court will grant the Secretary's motion for reconsideration and will reaffirm all parts of the October 6, 2000, opinion with the exception of the part relating to the Secretary's first contention above, specifically part II.B.1.b., 14 Vet.App. at 164-65, which will be superceded by part II.A.2 of this opinion, although the result remains the same. *Cf. Douglas v. Derwinski*, 2 Vet.App. 435, 437 (1992) (en banc) (reaffirming panel opinion in *Douglas v. Derwinski*, 2 Vet.App. 103 (1992), except for one part).

We will summarize the facts previously before the Court (the facts are fully stated in *Snyder I*, 14 Vet.App. at 156-60) and the Court's conclusions in *Snyder I* and will then address the Secretary's objections to certain of those conclusions.

## I. Background

In June 1989, the veteran filed a claim for a rating above 40% for a service-connected lumbosacral strain. Record (R.) at 27. A VARO, in a December 1989 decision, denied that claim and reduced his rating to 20%, effective in March 1990, and the Board agreed in December 1990. R. at 18-19, 41. On March 27, 1991, the veteran appealed pro se to this Court the December 1990 BVA decision. R. at 41. In May 1991, the veteran entered into a fee agreement with attorney Keith D. Snyder (the attorney), the appellant in the instant case, for representation before VA on the

veteran's "claim for veterans benefits before [VA]".  R. at 43-44.  In June 1991, the attorney filed here an appearance as counsel for the veteran in that appeal and filed another fee agreement, also dated in May 1991, that related to that Court representation.  Each fee agreement provided for a 20% contingency fee to be withheld and paid directly to the attorney by the Secretary from any past-due benefits awarded to the veteran "following execution of this agreement".  *See*, *e.g.*, R. at 43; *see also Snyder I*, 14 Vet.App. at 157.  The attorney apparently also filed those fee agreements with an RO in June 1991.  *See* R. at 62, 65, 137, 157.  In October 1991, the parties filed here a joint motion for remand (R. at 46-49), and the Court granted that motion and vacated the December 1990 BVA decision and remanded the matter (R. at 51).

On remand from the Court, the Board, now characterizing the issues as three separate claims (restoration of a 40% evaluation for lumbosacral strain; an increased rating, above 40%, for lumbosacral strain; and a TDIU-rating claim), remanded those claims to the RO.  R. at 55, 58-59.  In an April 1993 decision, the RO denied those three claims (R. at 73-79), and in June 1993 the attorney notified the veteran that he did "not want to continue pursuing this" matter on behalf of the veteran and that he was "returning [the veteran's] VA records" to him.  R. at 152.  In a December 1993 BVA decision, the Board noted that the veteran had raised an additional claim, for service connection for a psychiatric disorder, and remanded that matter for further development.  R. at 99-102.  After the RO denied the veteran's four claims (R. at 105-07), the Board remanded three of the claims to the RO and deferred a decision on the TDIU-rating claim until development of the other three claims was complete (R. at 126-30).  In February 1998, the RO restored to 40% the rating for lumbosacral strain; awarded service connection for chronic dysthymic (depressive) disorder; and awarded a TDIU rating.  R. at 132-35.

In April 1998, the RO notified the veteran that it had awarded him a lump-sum amount of $136,951.00 in past-due benefits for the three awards, paid him $109,560.80, and withheld $27,390.20 as a "potential 20% contingent fee" to be paid directly to the attorney by the Secretary.  R. at 144-46.  In that notification letter, the RO notified the veteran that his case was being transferred to the Board for a "determination of eligibility for payment of attorney fees from any past-due benefits."  R. at 146.  The Board, in an August 1998 letter, notified the attorney and the veteran that it was considering a reduction of the attorney's fee.  R. at 154-55.  In a November 25, 1998,

BVA decision as to eligibility for payment of attorney fees from past-due benefits and the reasonableness of the fee provided for in any underlying fee agreement, the Board (1) denied eligibility for payment of attorney fees from past-due benefits as to the neuropsychiatric-disorder claim; (2) concluded that "the attorney is eligible to receive payment of attorney fees in connection with his representation of the veteran before VA on the issues of restoration of the 40 percent rating for a low[-]back disorder and entitlement to TDIU"; and (3) reduced to $0, as unreasonable, attorney fees called for in the fee agreement pertaining to the restoration of a 40% rating for a low-back disorder and for a TDIU rating. R. at 3, 10. Although the Board noted that the attorney had "asserted that VA ha[d] the authority to pay the fee for services he had rendered the veteran while representing him before the Court", the Board concluded that it "may review only the contract for services before VA" and that "[r]eview of [fee] agreements [for representation before the Court] is exclusively within the province of the Court." R. at 3, 6.

On December 2, 1998, the attorney appealed that BVA decision through other counsel. On June 29, 1999, the Secretary filed a motion in that appeal, seeking Court review of the fee agreement for the attorney's representation before the Court in connection with the October 1991 Court remand. On July 12, 1999, the attorney filed (1) a response opposing the Secretary's motion and (2) a petition for extraordinary relief in the nature of mandamus. In the petition, the attorney seeks a Court order directing the Secretary (a) to show cause why he had failed to pay the withheld 20% to the attorney, and (b) either to make immediate payment or to direct the RO to make a decision on the attorney's entitlement, because of his representation of the veteran before this Court, to direct payment of the withheld 20% of past-due benefits. Thereafter, the Secretary filed a response, the appellant filed a reply, and the Court, on October 1, 1999, consolidated the appeal and petition cases.

On October 18, 1999, the attorney filed an amended petition for extraordinary relief. He attached a copy of an October 1, 1999, letter to the veteran from the RO that stated that the RO had erroneously released to the veteran, on September 17, 1999, the withheld 20% of past-due benefits and that demanded that he return those funds to VA. Amended Petition, Exhibit 1. The attorney requested relief based on the "inexplicable action" in making that payment to the veteran; specifically, he requested that the Court (1) order the Secretary to show cause as to why he released the previously withheld 20%; (2) find that the payment to the veteran of that 20% was "an act of 'bad

4

faith' by the Secretary"; (3) consider sanctions against the Secretary for making that payment; (4) "direct the Secretary to create an overpayment in the veteran's account"; and (5) order the Secretary to pay that 20% to the attorney or order the Secretary to show cause why a writ should not be issued. In December 1999, the Court, inter alia, granted intervenor status to the veteran. *Snyder v. West*, 13 Vet.App. 244, 248-49 (1999) (per curiam order). On April 11, 2000, the Court stayed the matter pending the outcome of *Scates*, *supra*.

In the October 6, 2000, opinion in *Snyder I* (issued after the en banc opinion in *Scates*, *supra*), the Court lifted the previously-imposed stay. After noting that the RO had never made a determination as to the attorney's eligibility to receive fees under the fee agreements considered by the Board, the Court vacated the November 1998 BVA decision "'for [the Board's] want of original jurisdiction to decide eligibility for direct payment of a withheld contingency fee under [38 U.S.C. §] 5904(d)'" and remanded the matter "'to the Board with directions to dismiss that matter as referred to the Board by the RO.'" *Snyder I*, 14 Vet.App. at 160 (quoting *Scates*, 14 Vet.App. at 64). The Court held, inter alia, that "the Secretary is obliged by his own regulation [(38 C.F.R. § 20.609(h))] to pay the attorney under a withhold-and-pay contingency-fee agreement if the statutory and regulatory requirements are met", *Snyder I*, 14 Vet.App. at 164, but denied the petition for extraordinary relief because, the Court held, as to each request for relief that the petitioner had made, he had not established a clear and indisputable right to the writ and/or had not demonstrated a lack of adequate alternative means to obtain the relief sought, *id.* at 162-66. Finally, the Court held that the matter of the Court's review of the fee agreement for representation before the Court "should originate at the RO" and denied the Secretary's June 1999 motion. *Id.* at 168.

## II. Analysis
### A. "Binding" Nature of Comptroller General Opinions

*1.* **Snyder I** *Analysis.* The Secretary notes that the Court's holding in part II.B.1.b. of *Snyder I*, 14 Vet.App. at 164-65, rejected VA Gen. Coun. Prec. 27-92 (Dec. 9, 1992), which had held that VA lacks the authority to pay attorney fees under section 5904(d) when a wrongful payment in the amount of a withheld amount has been made by VA because, according to the General Counsel, the full amount of past-due benefits has been exhausted. Mot. at 3. The Secretary then states: "The

5

panel based its holding on a line of Comptroller General decisions, beginning with 2 Comp. Gen. 102 (1922), which it found to support the conclusion that VA had an obligation to pay attorney fees under 38 U.S.C. § 5904(d), even though it required VA to make duplicate payments." Mot. at 3. The Secretary contends that "[t]he Court's decision to invalidate VAOPGCPREC [sic] 27-92 was based primarily on the premise that decisions by the Comptroller General regarding the legal liability of executive branch agencies and officials in cases where funds are erroneously released, are binding on such agencies", and concludes that "[t]his premise is incorrect." *Ibid.*

The Secretary cites *Bowsher v. Synar* for the proposition that "an intrusion into the function of the executive branch [by the Comptroller General, found by the Supreme Court to be an agent of Congress, is a] violation of the Separation of Powers Clause of the Constitution". *Bowsher*, 478 U.S. 714, 736 (1986). The Secretary cites an opinion of the Department of Justice Office of Legal Counsel, which concluded that "the Comptroller General, as the agent of Congress, cannot issue interpretation[s] of the law that are binding on the Executive Branch." 15 Op. O.L.C. 80, 85 (1991). The Secretary further cites a November 15, 1995, Department of Justice Order that found that the Comptroller General "does not have the legal authority to issue decisions or interpretations of law that are binding on the Executive Branch." DOJ Order 2110.39A (Nov. 15, 1995).

The Court agrees that a holding that the decisions of the Comptroller General are binding on VA would appear to raise serious separation-of-powers concerns. However, contrary to the arguments raised by the Secretary, it is not a settled matter that the Comptroller General decisions cited by the Court are not binding on VA. The Supreme Court in *Bowsher* invalidated **legislation** that purported to give a particular decision of the Comptroller General the authority to bind the President. *See Bowsher*, 478 U.S. at 732-34. The Supreme Court did not, however, state that **any** decision of the Comptroller General could not have binding authority over an executive agency. Nor is there any authority binding on this Court to support such a conclusion. The only authority that the Secretary offers in this regard are the two Justice Department issuances cited above, both of which concluded that the Comptroller General, as an agent of Congress, does not have the legal authority to issue decisions or interpretations of law that are binding on the Executive Branch. Although these Justice Department issuances may be instructive, they are not binding on this Court and hence do not settle this issue.

Further, *Snyder I* held: "Where VA makes an erroneous payment to a particular beneficiary from the compensation and pension account, that in no way impairs its authority and obligation to pay from that fund the amount that is owed to the correct beneficiary." 14 Vet.App. at 164. The opinion also concluded: "The bottom line is that the erroneous payment's existence is immaterial to the Secretary's responsibility to make the payment to which there is lawful entitlement." *Id.* at 165. What the Court held in this subpart of its prior opinion, apart from the citation to ***any*** additional authority, is that, ***under the statute and the regulations implementing that statute***, the Secretary has the authority and obligation to make payments to the correct beneficiary in cases where an incorrect beneficiary has already received payment. This holding is clearly counter to the holding of Gen. Coun. Prec. 27-92 that VA has no authority to pay the correct beneficiary in that situation. Hence, at the point when the Court stated that Gen. Coun. Prec. 27-92 is "in conflict with the binding opinions of the Comptroller General discussed below, and hence is invalid", *Snyder I*, 14 Vet.App. at 164-65, the holding of the Court ***was already in conflict with*** (and hence had trumped) Gen. Coun. Prec. 27-92.

Notwithstanding the above, however, part II.B.1.b. of the *Snyder I* opinion will be superceded by the instant opinion because of the potential for that subpart to be read as a statement of the Court on this separation-of-powers issue, and the text in part II.A.2., below, will be substituted in its place. The Court further emphasizes that it makes no statement on whether or not decisions of the Comptroller General can be binding on VA. *See Bucklinger v. Brown*, 5 Vet.App. 435, 441 (1993) ("it is '[a] fundamental and long-standing principle of judicial restraint . . . that courts avoid reaching constitutional questions in advance of the necessity of deciding them'" (quoting *Lyng v. Northwest Indian Cemetery Protective Association*, 485 U.S. 439, 445 (1988))).

*2. **Replacement Analysis.*** There can be no doubt and we conclude, as did the Court in *Aronson v. Derwinski*, 3 Vet.App. 162, 164 (1992) (per curiam order), that the Secretary is obliged, pursuant to the statute and its implementing regulation, to pay the attorney under a withhold-and-pay contingency-fee agreement if the statutory and regulatory requirements are met. That is because the Secretary is no less obligated to take a particular action when the duty is created by statute than when it is created by regulation pursuant to express statutory authorization. The law is clear that a federal agency is bound to follow its own regulations as long as they are in force. *See Vitarelli v. Seaton*,

7

359 U.S. 535, 539-40 (1959); *Service v. Dulles*, 354 U.S. 363, 383-89 (1957); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265-68 (1954); *Schafrath v. Derwinski*, 1 Vet.App. 589, 592 (1991) (Board not free to ignore regulation adopted by VA); *see also Grivois v. Brown*, 6 Vet.App. 136, 140 (1994) (citing *Vitarelli*, *supra*, for proposition that procedures must be provided to all similarly situated VA claimants).

In this connection, we stress that the Secretary's obligation and the attorney's right **do** derive from the statute, which expressly authorizes the Secretary to make payment to the attorney. Without such express statutory sanction, the Secretary, as noted in part II.B.1.a. of *Snyder I*, 14 Vet.App. at 162-64, would be prohibited by the anti-assignment provision of 38 U.S.C. § 5301(a) from honoring any such direct-payment fee-agreement provision. Of equal importance, the Secretary, in the exercise of this statutory authority, has elected to promulgate a regulation that mandates that such payment be made to the attorney. *See* 38 C.F.R. § 20.609(h) ("the claimant or appellant and an attorney-at-law may enter into a fee agreement providing that payment for the services of the attorney-at-law will be made directly to the attorney-at-law by the Department of Veterans Affairs out of any past-due benefits awarded [to the claimant or appellant] . . . . Such an agreement will be honored by the Department . . . .").

Thus, pursuant to the statute and regulation, the Secretary has the full authority, indeed, the obligation, to pay the attorney out of VA's entitlement account (the compensation and pension account) just as the Secretary does to pay any other VA claimant out of that account, which is routinely funded by deficiency appropriation when the amount appropriated to that account in any fiscal year proves inadequate come the end of a fiscal year, *see*, *e.g.*, 54 Comp. Gen. 393, 395 (1974) ("should applicable appropriation be exhausted, a deficiency appropriation would be necessary prior to payment of additional claims"). We hold that where VA makes an erroneous payment to a particular beneficiary, that payment in no way impairs its authority and obligation to pay from the compensation and pension account the amount that is owed to the correct beneficiary. As will be discussed in greater detail in part II.C., below, the amount owed to the correct beneficiary, in fact, remains **undisturbed** in the compensation and pension account. Whether or not the Secretary decides to seek to recoup the erroneous payment is an entirely different matter. *See* 38 U.S.C. § 5314 (providing Secretary with authority to "deduct the amount of the indebtedness of any person

who has been determined to be indebted to the United States by virtue of such person's participation in a benefits program administered by the Secretary from future payments made to such person under any law administered by the Secretary"). The Secretary's historic reliance on VA Gen. Coun. Prec. 27-92 (concluding that "VA has no legal authority to pay attorney fees when payment of the complete amount of past-due benefits has been made to the claimant") is plainly in conflict with our holding here and hence is invalid.

The bottom line is that the erroneous payment's existence is immaterial to the Secretary's responsibility to make the payment to which there is lawful entitlement. These principles are given expression in the decisions of the Comptroller General of the United States. *E.g.*, 2 Comp. Gen. 102, 106 (1922) (establishing that, where Veterans' Bureau made erroneous payment to person not entitled thereto and where another person is clearly entitled to that payment, it is "duty" of Director of Veterans' Bureau to "make payment to the rightful claimant . . . irrespective of recovery by the government of the amount erroneously paid . . . even though it involves the government in a double payment, provided, of course, there has been no contributing negligence or other fault chargeable to the person claiming the payment"); *see also* 66 Comp. Gen. 617, 619 (1987) (same, as to payment to Army construction contractor); 37 Comp. Gen. 131, 133 (1957) (same, as to payment of death gratuity under Servicemen's and Veterans' Survivor Benefits Act); 19 Comp. Gen. 104, 105 (1939) (same, as to Social Security Act payment).

Based on the foregoing analysis in this subpart, the Court holds that, if the fee agreement has met the statutory and regulatory requirements, the Secretary is required to make payment to the appellant in this case of any portion of the 20% to which he is found to be entitled. *See In the Matter of the Fee Agreement of Mason*, 13 Vet.App. 79, 86 (1999). Because there is no connection between any overpayment by the Secretary to the veteran and any contingency-fee amount that the Secretary might under the circumstances here be obligated to pay directly to the attorney, we further hold that the attorney, "who carries the burden in this matter, has not adequately established a clear and indisputable right to a writ", *Costanza v. West*, 12 Vet.App. 133, 134 (1999) (per curiam order), as to that specific relief sought, and the Court thus may not order such mandamus relief. *See In the Matter of the Fee Agreement of Cox*, 10 Vet.App. 361, 370 (1997), *vacated in part on other grounds sub. nom. Cox v. West*, 149 F.3d 1360, 1363, 1365-66 (Fed. Cir. 1998) (affirming all holdings;

vacating only for consideration of asserted facts occurring after this Court's opinion).  Accordingly, the petition is moot insofar as it seeks to compel the Secretary to create an overpayment against the veteran, because the amount of the fee that is owed to the attorney must, in accordance with our analysis in this opinion of the applicable statutory and regulatory provisions, be paid to him by the Secretary regardless of any overpayment created against the veteran.

### B.  Comptroller General Opinions as Persuasive Authority

The Secretary next argues that the Comptroller General opinions "relied upon by the Court . . . do not support the outcome in this case."  Mot. at 5-6.  The Secretary states in this regard:

> First, the seminal Comptroller General Opinion in this line, 2 Comp. Gen. 102 (1922), dealt exclusively with payments to a veteran based upon a life insurance policy.  As this Court has recognized, a VA insurance policy is a contract between the veteran and the United States Government.  *Wolfe v. Gober*, 11 Vet.App. 1, 2 (1997); 38 U.S.C. § 1917.  Unlike VA's obligation to pay the proceeds of an insurance policy to the correct beneficiary, the Secretary does not have a "contractual" responsibility to directly pay attorney fees under 38 U.S.C. § 5904(d).  The only "contract" in such matters exists between the attorney and his or her client.  Because the United States was not a party to Mr. Snyder's attorney-fee contract with his client, he cannot seek to enforce this agreement against the United States.  *See Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984).
>
> Further, the Comptroller General decisions cited by the Court pertain to whether disbursing or certifying officials can properly make certain payments, free of liability. . . .  Thus, the Comptroller General's decision, which arose in very different circumstances that did not involve sovereign immunity issues, does not provide a persuasive rationale for the decision of the Court here.

Mot. at 6-7.

The Secretary's arguments on this point are not persuasive.  He attempts to distinguish 2 Comp. Gen. 102 because it dealt with contractual rights and the current situation does not arise out of a contract.  However, this argument ignores the Court's conclusion in *Snyder I*, which we reiterate today in subpart II.A.2., above, that (1) the Secretary has an ***obligation*** to pay the attorney, and (2) this obligation is derived from ***the statute***.  14 Vet.App. at 164 ("we stress that the Secretary's obligation and the attorney's right ***do*** derive from the statute").  The Secretary fails to address why a right derived from a statute (arguably a much stronger basis for such a right) could be so dissimilar

10

from a right derived from a contract that an opinion dealing with the contractual right has no persuasive authority.  Moreover, the Secretary's argument that Mr. Snyder cannot seek to enforce this agreement against the United States because the United States was not a party to the agreement again clouds the issue by treating "the attorney's right", *ibid.*, as if it were a right derived from a contract, rather than from a statute.  Finally, the Secretary has failed to explain why the derivation of a right from a contract would render that right superior to one derived from a statute.  As to the Secretary's point about this not being a matter of a disbursing or certifying official's liability for making a payment, that argument is similarly off point.  Of course, Comptroller General opinions are often precipitated by requests from such officials, who are expressly authorized by law to obtain immunity from personal liability by requesting and relying on such opinions, *see* 31 U.S.C. § 3529, but the Comptroller General's opinions expressed in response to such requests have force even in situations not directly involving such officials (of course, they *are* involved in the payment question before us).  Because the Secretary has provided very little support for his contention that these Comptroller General opinions have no *persuasive* authority, we reject this argument.

### C.  Sovereign Immunity and Payment

The Secretary next argues that "this Court misinterpreted controlling precedent on sovereign immunity".  Mot. at 7.  The Secretary's pertinent arguments on this point are (1) an argument that the Court failed to address *Ruckelshaus v. Sierra Club*, 463 U.S. 680 (1983), and *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975), cases upon which Gen. Coun. Prec. 27-92 had relied; and (2) an argument that "[p]ayment of the attorney fees out of a source other than the claimant's past-due benefits, based upon 38 U.S.C. § 5904(c) and (d), would be inconsistent with *Ruckelshaus* and *Alyeska*, as these provisions do not waive sovereign immunity".  Mot. at 10.

As to the Secretary's first argument, he appears to be citing to a passage in *Alyeska* where the Supreme Court stated:

> If, as respondents argue, one of the main functions of a private attorney general is to call public officials to account and to insist that they enforce the law, it would follow in such cases that attorneys' fees should be awarded against the Government or the officials themselves.  Indeed, that very claim was asserted in this case.  But [section 2412 of the Mineral Land Leasing Act] on its face, and in light of its legislative

11

history, generally bars such awards, which, if allowable at all, must be expressly provided for by statute . . . .

*Alyeska Pipeline Service Co.*, 421 U.S. at 267-68 (footnotes omitted). The Secretary then relies on *Ruckelshaus* for the proposition that "[e]xcept to the extent it has waived its immunity, the Government is immune from claims for attorney[] fees". *Ruckelshaus*, 463 U.S. at 685. The direct applicability of either of these two cases to the instant case seems dubious; both cases are addressing situations where the prevailing party is seeking fees *from* the opposite party. In the instant case, the fees under contention are fees paid from an amount awarded *to the petitioner's client*, 14 Vet.App. at 159. Thus, it does not appear to the Court that these cases are directly controlling in this case, and there was, therefore, no overriding necessity to address them in *Snyder I*.

As to the Secretary's second argument, it appears to be relying on the assumption that any payment of attorney fees made subsequent to the Court's opinion would be coming out of a source other than the veteran's past-due benefits and that, consequently, the Secretary would have no authority to make such a payment. This reasoning is fatally flawed because it relies on the assumption that the erroneous payment to the veteran, on September 17, 1999, *itself* came from the veteran's past-due benefits. However, as laid out in *Snyder I*, 14 Vet.App. at 164-65 (and as reiterated in part II.A.2., above), and as is inherent in 38 U.S.C. § 5904(d)(2)(A)(i) ("[a] fee agreement referred to in paragraph (1) is one under which the total amount of the fee payable to the attorney . . . *is to be paid* to the attorney by the Secretary *directly* from any past-due benefits awarded on the basis of the claim" (emphasis added)) and in 38 C.F.R. § 20.609(h) ("the claimant or appellant and an attorney-at-law may enter into a fee agreement providing that payment for the services of the attorney-at-law *will be made directly to the attorney-at-law by the Department of Veterans Affairs out of any past-due benefits* awarded as a result of a successful appeal to the Board" (emphasis added)), the Secretary is *obligated* to withhold and pay this amount. (The amount of such payment would, of course, be subject to review, as an incident of review of the underlying fee agreement. *See* 38 C.F.R. § 20.609(i); *Snyder I*, 14 Vet.App. at 165 ("if the fee agreement has met the statutory and regulatory requirements, the Secretary is required to make payment to the appellant in this case of any portion of the 20% to which he is found to be entitled")).

Therefore, in order to accept the underlying assumption in the Secretary's argument, we would have to endorse the view that the Secretary released the veteran's withheld funds in a manner other than as directed by the veteran *and therefore in contravention of the statute and regulation*. In other words, to agree with the Secretary's argument, the Court would have to accept the position that the Secretary, in these situations, acted contrary to the law as to his section 5904(d) obligation, whereas under the theory in *Snyder I* the Court is making no determination or assumption about the legality of the payment to the veteran of an amount equal to the withheld amount. That is a matter between the Secretary and the veteran. *Cf.* 38 U.S.C. §§ 5302(a) (providing that waiver of collection of overpayment may be granted "whenever the Secretary determines that recovery would be against equity and good conscience"), 5314 (providing for declaration of overpayment and offset against other due benefits).

That is why the Court, in the underlying opinion, held that "[t]he Secretary has the full authority . . . to pay the attorney out of VA's entitlement account . . . just as it does to pay any other VA claimant out of that account". 14 Vet.App. at 164. This conclusion derives from the concept that the Secretary's proper course of action in a section 5904(d) case where an amount has been erroneously paid to the veteran is as follows: The Secretary pays 80% of past-due benefits to the veteran and thereafter erroneously releases from an unidentified account an amount equivalent to the 20% withheld. The Secretary may thereafter (after any appropriate fee-agreement-review determination as to eligibility and perhaps as to reasonableness) release some or all of the 20% of withheld past-due benefits, which amount has remained *undisturbed* in VA's entitlement account (and, after appeals have been exhausted as to such payment, the Secretary releases any remainder to the veteran). This reasoning renders the Secretary's arguments of no weight, because he assumes that the *later-released* amount of withheld past-due benefits is an *additional* amount, rather than a payment from the original 20% of withheld funds; however, the Secretary provides no authority for such an interpretation. Therefore, the Court rejects the Secretary's argument that sovereign immunity prevents any payment to the appellant of the previously withheld 20% of past-due benefits.

### D. Scates

Finally, the Secretary argues that the Court misapplied the holding of *Scates*, *supra*, when it vacated the November 25, 1998, Board decision here and, pursuant to *Scates*, remanded the matter

13

to the Board with directions to dismiss the matter as it had been referred to the Board by the RO. The Secretary contends that this holding of the Court is overbroad, in that it also encompassed a determination of the Board that any attorney fee (for representation before VA) in excess of $0, from past-due benefits awarded to the veteran based on restoration of a 40% rating for a low-back disorder and the grant of a TDIU rating, was excessive and unreasonable. Mot. at 11-12. The Secretary makes four arguments, which we will address separately below.

1. *Holding of* **Scates**. First, the Secretary maintains that the holding of *Scates* pertained to eligibility determinations, not to reasonableness determinations. This contention is correct, and *Snyder I* never stated to the contrary. In *Scates*, the Court held that "all issues involving entitlement or eligibility for attorney fees under direct-payment contingency-fee agreements, as contrasted with the issues of reasonableness and excessiveness, must first be addressed by the RO in accordance with the normal adjudication procedures and cannot be the subject of sua sponte or other original (on motion) BVA review." *Scates*, 14 Vet.App. at 64. We said in *Snyder I* only the following: "The Court held in *Scates* that the determination of entitlement or eligibility for attorney fees under direct-payment contingency-fee agreements must first be addressed by the RO." *Snyder I*, 14 Vet.App. at 160.

2. *Secretary's Authority to Review Direct-Payment Fee Agreements for Reasonableness.* As to the Secretary's second argument, that he is provided authority to review fee agreements for reasonableness by 38 U.S.C. § 5904(c)(2) apart and independent from any RO determination of eligibility, this is an issue that the Court has not previously addressed directly in the context of direct-payment fee agreements. The *Snyder I* opinion stated that "[a]ny review by this Court of the reasonableness of that fee agreement would be premature until entitlement and eligibility are first determined", *Snyder I*, 14 Vet.App. at 167; however, this statement was made in the context of a discussion about the fee agreement for representation before *the Court*, not for representation before the Board or VA. *Cf. Carpenter v. Principi*, 15 Vet.App. 64, 93 (2001) (en banc) (Kramer, C.J., dissenting) ("In addition, this Court has stated that any review of reasonableness would be premature until eligibility is first determined. *See Snyder v. Gober*, 14 Vet.App. 154, 167 (2000), *mot. for recons. filed* (Nov. 13, 2000). Assuming that there is a sequential relationship between eligibility

14

and reasonableness, I believe that before the Court can address reasonableness, it must first address the underlying threshold issue of eligibility.").

In order to accept the Secretary's argument on this point, we would have to conclude that a determination of eligibility ***is not*** a necessary predicate to a determination of the reasonableness of fees provided for in a direct-payment fee agreement under which the Secretary may have an obligation to withhold money from the claimant and pay it to the claimant's attorney. However, such a finding would entail a strained reading of the statute as well as a result that is in conflict with similar concepts at work in an analogous area of the Court's caselaw involving attorney-fee payments made by the Secretary – under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA), discussed *infra*.

As noted, the Secretary supports his argument here by reliance on the authority in 38 U.S.C. § 5904(c)(2) that "[t]he Board, upon its own motion or the request of either party, may review such a [direct-payment] fee agreement and may order a reduction in the fee called for in the agreement if the Board finds that the fee is excessive and unreasonable". Under *Scates*, the Board cannot address eligibility in the first instance under a direct-payment fee agreement. *Scates*, 14 Vet.App. at 64. Therefore, any Board "review" in the first instance of a direct-payment fee agreement can address ***only*** the subject of reasonableness. The question then becomes whether Board review in the first instance of the reasonableness of the fee provided for in such a direct-payment fee agreement must follow sequentially an RO determination as to eligibility (just as it follows sequentially the discussion of eligibility in the statute, *compare* 38 U.S.C. § 5904(c)(1) *with* § 5904(c)(2)), or whether such review can be conducted temporally independent from an RO determination of eligibility under such a direct-payment agreement. Under the Secretary's argument, the Board could apparently order a reduction in the fee called for in such an agreement before the lawfulness of that agreement (i.e., the eligibility of the parties to enter into such agreement obligating the Secretary to make a direct payment to the attorney) is settled. However, pursuant to section 5904(c)(1), "a fee may not be charged, allowed, or paid" unless a fee agreement is legally valid (i.e., filed after the BVA first makes a final decision, and when an attorney is retained with respect to that case before the end of the one-year period beginning on that date). The Secretary's argument puts the cart before the horse by sanctioning situations, such as the instant one, where the Board is opining on the

15

reasonableness of fees to be paid to attorneys by VA under such agreements that may potentially be found to be legally invalid.

The Secretary's argument on this point also runs counter to the determinations by the Court in the roughly analogous area of attorney fees paid by the Secretary under the EAJA. The Court has stated in that context that "[t]here are three predicate requirements to the Court's granting an EAJA application" and that "[o]nce the claimant crosses this statutory threshold, '[i]t remains for the [Court] to determine what fee is "reasonable"'". *Cullens v. Gober*, 14 Vet.App. 234, 240 (2001) (en banc) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). *See also Sandoval v. Brown*, 9 Vet.App. 177, 179 (1996) (describing "predicate requirements for an award of EAJA fees" that must precede Court determination of what constitutes a reasonable fee); *Vidal v. Brown*, 8 Vet.App. 488, 490-91 (1996) (same); *Doria v. Brown*, 8 Vet.App. 157, 161 (1995) (same); *Uttieri v. Brown*, 7 Vet.App. 415, 416-17 (1995) (same). There does not appear to be a basis for determining here that review of the reasonableness of fee agreements for direct VA payment under section 5904(d) is so different from a review of the reasonableness of EAJA fees that a review of eligibility should not here also be considered a predicate requirement.

Nor is there any overriding policy implication that would seem to favor the Secretary's argument that a reasonableness determination can be made before fee-payment eligibility is addressed in a direct-payment fee-agreement situation. Rather, the statute and analogous caselaw all point to the conclusion that a finding of eligibility is a prerequisite to the Board's review of the reasonableness of a direct-payment fee agreement. We therefore hold that section 5904(c)(2) requires that determinations of eligibility (which, under *Scates*, 14 Vet.App. at 64, must be done by the RO in the first instance) are a prerequisite for any Board review of the reasonableness of a direct-payment fee agreement. Thus, we reject the Secretary's argument on this point. We express no view about this same question as it may be presented in the context of VA review of the reasonableness of a non-direct-payment fee agreement, such as was involved in *Carpenter*, 15 Vet.App. at 76-80. *But cf. id.* at 84 n.14 (Steinberg, J., concurring in part and dissenting in part) ("it appears that the Board had no jurisdiction over that [eligibility] issue"); *id.* at 93-94 (Kramer, C.J., dissenting) (pointing out that "majority fails to address" the "underlying threshold issue of eligibility" before it addressed "reasonableness"). We deal here only with the circumstances precedent to the Secretary's

16

fulfilling his obligation to pay the attorney a reasonable fee withheld from an award of past-due benefits to the client.

   *3. Holding of* **Scates** *as to Reasonableness Determinations.* The Secretary's third argument is: "The full Court in *Scates* determined, *inter alia*, that **only** the issue of 'entitlement or eligibility for attorney fees under direct-payment contingency-fee agreements, as contrasted with the issues of reasonableness and excessiveness, must first be addressed by the RO'". Mot. at 12 (emphasis added). This is a misstatement of the Court's holding in *Scates*. The actual text of *Scates* is: "[W]e hold that all issues involving entitlement or eligibility for attorney fees under direct-payment contingency-fee agreements, as contrasted with the issues of reasonableness and excessiveness, must first be addressed by the RO in accordance with the normal adjudication procedures and cannot be the subject of sua sponte or other original (on motion) BVA review." *Scates*, 14 Vet.App. at 64. Notwithstanding the Secretary's characterization of this language, we find no indication in the *Scates* text that the Court was sanctioning a view that a reasonableness determination could be made completely independent from any determination as to eligibility. Further, there is no indication in *Scates* that the Board decision under review in that case had considered reasonableness. *Scates*, 14 Vet.App. at 63-65. Hence, even if the *Scates* opinion could be read as the Secretary suggests, any such statement by the Court in *Scates* would be dictum. Nor has the Secretary offered any evidence or argument to support such a reading. Finally, even were the Court to agree with the Secretary's argument, that would have no impact on the result here because the issue that remains undecided from *Scates* is whether the RO, after determining eligibility, **can**, in the first instance, address reasonableness and excessiveness. That is not decided here. Therefore, we reject the Secretary's argument on this point as well.

   *4. Board's Eligibility Determination Favorable to the Appellant.* Finally, the Secretary's fourth argument is:

> If the Court remanded the reasonableness decision because the Board first determined that Appellant was eligible for payment of attorney fees from past-due benefits as to those claims, the Secretary would submit that the Court lacked jurisdiction over that eligibility decision. As that part of its decision was fully favorable to Appellant and not appealed by him, there existed no case or controversy with respect to it for the Court to consider. As this Court held in *McRae v. Brown*, 9 Vet.App. 229, 233 (1996) (per curiam)[,] and *Massey v. Brown*, 9 Vet.App. 134,

17

136 (1996) (per curiam order), the Court lacks jurisdiction over issues in a case as to which there exists no case or controversy.

Mot. at 13. This argument misapprehends the nature of both the Board's and the Court's authority.

As the Court held in *Scates*, the **Board** lacks jurisdiction to make a determination as to eligibility. *Scates*, 14 Vet.App. at 64. Although the notion that determinations that are fully favorable to a VA claimant should not later be revisited by the Court has a grounding, *see*, *e.g.*, *Nolen v. Gober*, 222 F.3d 1356, 1360 (Fed. Cir. 2000) (holding that determination of well groundedness, once made, cannot be revisited by Court), there is no instance in the caselaw, nor has the Secretary provided any support to the contrary, where the Court has acknowledged that, because a Board finding was favorable to an appellant, the Court is allowing that finding to stand even though it was made without the Board's having jurisdiction to make it. Indeed, in a different context, the U.S. Court of Appeals for the Federal Circuit has already rejected an argument that a finding favorable to an appellant must stand even though the Board may not have jurisdiction to hear the case. *See Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996) (holding, in a case wherein RO had made implicit finding that new and material evidence had been presented to reopen previously and finally disallowed claim, "that the Board does not have jurisdiction to consider a claim which it previously adjudicated unless new and material evidence is presented, and before the Board may reopen such a claim, it must so find [expressly; w]hat the regional office may have determined [on this point] is irrelevant"), *aff'g* 8 Vet.App. 1 (1995). Accordingly, although it may be the general rule that there is no case or controversy as to a BVA determination that was favorable to an appellant, that is not the case where the BVA lacked jurisdiction to make the determination in the first instance. Under such circumstances, we can – indeed, we are generally obligated to – examine whether the BVA had jurisdiction to address the issue. Therefore, we reject the Secretary's argument that we lack jurisdiction to examine the Board's determination as to the eligibility of the appellant to collect a fee under this fee agreement.

### III. Conclusion

In view of the foregoing discussion and after consideration of the Secretary's motion for reconsideration, that motion is granted, and the Court has reconsidered the previous opinion in this

18

case. The Court reaffirms the original opinion in *Snyder I* with the exception of part II.B.1.b. thereof, 14 Vet.App. at 164-65, which is superseded by part II.A.2., above, although the result remains the same.

RECONSIDERATION GRANTED AND ORIGINAL OPINION REAFFIRMED IN PART AND SUPERSEDED IN PART.