Donald D. HUSTON, Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–Appellee.

No. 91–5074.

United States Court of Appeals, Federal Circuit.

Feb. 10, 1992.

---

John Long, Troy, Ill., submitted for plaintiff-appellant.

Hillary A. Stern, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted for defendant-appellee (Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Terrence S. Hartman, Asst. Director and Kirk T. Manhardt, Atty., Commercial Litigation Branch, Dept. of Justice, were on the brief).

Before MAYER, Circuit Judge, COWEN, Senior Circuit Judge, and RADER, Circuit Judge.

## OPINION

MAYER, Circuit Judge.

Donald D. Huston appeals the order of the United States Claims Court, No. 394–89C (Feb. 25, 1991), dismissing his complaint for want of jurisdiction over the United States Army Corps of Engineers' refusal to raise his pay. We affirm.

### Background

Huston was formerly a civilian employee of the St. Louis District of the United States Army Corps of Engineers. On May 11, 1975, he was promoted to the position of Supervisory Civil Engineering Technician, in which capacity he served until he retired on June 13, 1989. During this time, Huston was paid according to the General Schedule rating for his position. As part of his duties, he supervised one or more "dredge masters," Corps employees who operated dredges on the Mississippi River.

These dredge masters were paid according to the prevailing rate for their services, not according to the General Schedule. By this arrangement, the dredge masters Huston supervised received larger annual salaries than he did.

Huston first complained about the disparity in salaries to the St. Louis District. The District office initially authorized a pay increase, but the increase was rescinded by the headquarters personnel office in Washington. Whereupon, he filed suit in the Claims Court asserting a right to a pay adjustment pursuant to 5 U.S.C. § 5333(b) (1988), which provides that General Schedule employees may be paid at the highest rate permitted by their grade if they regularly supervise prevailing-rate employees. By this action, Huston sought back pay, interest on back pay, attorney fees, and an order that his pension annuity be based on his highest three years of salary, calculated after the retroactive increase.

The government moved to dismiss the complaint on the ground that section 5333(b) is not a "pay-mandating" statute and that therefore the Claims Court lacks subject matter jurisdiction under *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The court granted the motion, giving three reasons why it agreed it had no jurisdiction on that basis. First, since section 5333(b) permits discretion in granting pay raises, it does not mandate the payment of money. Second, the regulations accompanying section 5333(b) do not curtail the government's discretion whether to enhance the salary or not. Third, *Sam v. United States*, 682 F.2d 925 (Ct.Cl.1982), is not authority for the proposition that the Claims Court has jurisdiction by section 5333(b). This appeal followed.

### Discussion

We start by clearing up apparent confusion over the proper interpretation of *Sam v. United States*. In that case, the Court of Claims analyzed section 5333(b) and affirmed the Navy's policy of adding a cost of living adjustment to a supervisor's General Schedule salary before comparing it

with the wage earned by subordinate employees. 682 F.2d at 932–34. But the court's jurisdiction was apparently not challenged and it did not hold that it had jurisdiction. It simply decided the case on the merits without comment about jurisdiction. Huston recognized in his brief that the Court of Claims "assumed that the statute was 'money-mandating' or 'pay-mandating,' and that it did have subject matter jurisdiction over a plaintiff's claim arising under that statute." He nevertheless argues that this is sufficient precedent upon which to confirm the Claims Court's jurisdiction. In this he is mistaken.

Because *Sam* did not address the question of its jurisdiction over section 5333(b), the Claims Court was free, indeed required, to consider its jurisdiction afresh before proceeding. As the Supreme Court has said, "Even as to our own judicial power or jurisdiction, this Court has followed the lead of Mr. Chief Justice Marshall who held that this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub silentio*." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 307, 82 S.Ct. 1502, 1514, 8 L.Ed.2d 510 (1962). So *Sam* is no impediment to a consideration of the Claims Court's jurisdiction over this complaint.

The Tucker Act is the primary statute conferring jurisdiction on the Claims Court and it limits that jurisdiction to "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1988). Thus, the Tucker Act "does not create any substantive right enforceable against the United States for money damages," *Testan*, 424 U.S. at 398, 96 S.Ct. at 953; the "substantive right must be found in some other source of law, such as 'the Constitution, or any Act of Congress, or any regulation of an executive department.'" *United States v. Mitchell*,

463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983) (quoting 28 U.S.C. § 1491).

■ For a statute, regulation, or constitutional provision to provide a substantive right it must "'fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Testan*, 424 U.S. at 400, 96 S.Ct. at 954 (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct.Cl.1967)); *see also Murray v. United States*, 817 F.2d 1580, 1582 (Fed.Cir.1987). If such a money-mandating provision is found, no separate waiver of sovereign immunity is required beyond the Tucker Act's consent to suit. *Mitchell*, 463 U.S. at 218, 103 S.Ct. at 2968. Thus, our inquiry focuses on whether section 5333(b) is a money- or pay-mandating statute.

■ That section 5333(b) is not pay mandating is manifest from its plain language:

Under regulations prescribed by the Office of Personnel Management, an employee in a position to which this subchapter applies, who regularly has responsibility for supervision (including supervision over the technical aspects of the work concerned) over employees whose pay is fixed and adjusted from time to time by wage boards or similar administrative authority as nearly as is consistent with the public interest in accordance with prevailing rates, *may* be paid at one of the rates for his grade which is above the highest rate of basic pay being paid to any such prevailing-rate employee regularly supervised, or at the maximum rate for his grade, as provided by the regulations. [Emphasis added].

Accordingly, an employee meeting certain requirements *may* have his pay increased; conversely, the statute does not in any way *require* the government to increase an employee's pay.

Huston admits that the Corps of Engineers has great discretion in deciding whether to grant—or not to grant—a pay increase. But he argues that the discretion is constrained by the regulations accompa-

nying section 5333(b), 5 C.F.R. §§ 531.301–.305 (1991), which set out the findings an agency must make before it increases pay. In light of this, he argues that section 5333(b) is money mandating under the authority of *Bradley v. United States*, 870 F.2d 1578, 1580 (Fed.Cir.1989), which held that 5 U.S.C. § 5349 (1988) is pay mandating: "Inasmuch as discretion is not unlimited, the statute must be deemed to be a pay-mandating statute." *Bradley* does not apply here, however, because section 5349 commands that "pay ... shall be fixed and adjusted" while our section 5333(b) provides that "an employee ... may be paid" at a higher rate. Indeed, the regulations accompanying section 5333(b) Huston cites do not curtail discretion; they merely explain the requirements an employee must satisfy to be eligible for a pay increase which might or might not be forthcoming.

A better analogy than *Bradley* is *Adair v. United States*, 648 F.2d 1318 (Ct.Cl. 1981), which held that 37 U.S.C. § 313 (1976) was not pay mandating.* *See also Pardo v. United States*, 648 F.2d 1330 (Ct.Cl.1981). Section 313 permitted variable incentive pay to be awarded to medical officers at the discretion of higher authorities. In *Adair*, the Court of Claims discussed that section 313 set forth "six eligibility requirements plus an overriding discretionary requirement." 648 F.2d at 1323. Thus, section 313's structure was akin to that of section 5333(b), yet, the Court of Claims held that section 313 was not pay mandating. Similarly, even if an individual meets section 5333(b)'s eligibility requirements, the agency may or may not grant a pay increase. The regulations accompanying section 5333(b) do not support a conclusion that it is a pay-mandating statute.

That section 5333(b) is not pay mandating is also confirmed by a reading of 5 U.S.C. § 5333 in its entirety. Section 5333(a) says that "[n]ew appointments *shall* be made at the minimum rate of the appropriate grade." (Emphasis added.)** When, within the same statute, Congress uses both "shall" and "may," it is differentiating between mandatory and discretionary tasks. *Grav v. United States*, 886 F.2d 1305, 1307 (Fed.Cir.1989). The one we are considering is discretionary and that defeats the claimed jurisdiction.

### Conclusion

Accordingly, the order of the Claims Court is affirmed.

AFFIRMED.

---

\* 37 U.S.C. § 313 was repealed effective Sept. 15, 1981, by Pub.L. No. 96–513, title IV, § 414(a), Dec. 12, 1980, 94 Stat. 2906.

\*\* In full, 5 U.S.C. § 5333(a) provides:

New appointments shall be made at the minimum rate of the appropriate grade. However, under regulations prescribed by the Office of Personnel Management which provide for such considerations as the existing pay or unusually high or unique qualifications of the candidate, or a special need of the Government for his services, the head of an agency may appoint, with the approval of the Office in each specific case, an individual to the position in GS–11 or above at such a rate above the minimum rate of the appropriate grade as the Office may authorize for this purpose. The approval of the Office in each specific case is not required with respect to an appointment made by the Librarian of Congress.