# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

Nos. 98-2219 and 99-1164

| | |
|---|---|
| Keith D. Snyder, | Appellant/Petitioner, |
| v. | |
| Anthony J. Principi, | |
| Secretary of Veterans Affairs, | Appellee/Respondent. |
| Patrick D. McCreary, | Intervenor. |

Before KRAMER, *Chief Judge*, and FARLEY,
HOLDAWAY, IVERS, STEINBERG, and GREENE, *Judges*.

## O R D E R

On November 14, 2001, the Court granted the Secretary's motion for reconsideration, but reaffirmed its October 6, 2000, opinion, and issued a new opinion that contained additional analysis. On December 17, 2001, the Secretary renewed his motion for a full Court decision, which was contained in the November 13, 2000, motion for reconsideration.

Motions for a full Court decision are not favored. Ordinarily they will not be granted unless such action is necessary to secure or maintain uniformity of the Court's decisions or to resolve a question of exceptional importance. In this appeal, the Secretary has not shown that either basis exists to warrant a full Court decision.

Upon consideration of the foregoing, the record on appeal, and the Secretary's motion for a full Court decision, it is

ORDERED that the motion for a full Court decision is denied.

DATED:      April 11, 2002                    PER CURIAM.

STEINBERG, *Judge*, concurring: The Court has voted unanimously to deny the Secretary's motion for a full-Court decision in this matter. As the author of the panel opinion in this case, *Snyder v. Principi*, 15 Vet.App. 285 (2001) [hereinafter *Snyder II*], and as a member of the panel that decided the companion case of *Cox v. Principi*, 15 Vet.App. 280 (2001) (per curiam order) [hereinafter *Cox IV*], I write separately to address the Secretary's flawed arguments, because, in the

event of further appellate review, I believe that the record in this Court should be as complete as possible.[1]

---

[1] I have not undertaken to address at any length the Secretary's arguments regarding what he perceives to be unreasonable interference with the Department of Veterans Affairs (VA) adjudication process insofar as the sequence of adjudication steps to be taken at VA regional offices and the Board of Veterans' Appeals (BVA) regarding review of fee agreements is concerned. That is because I believe that the panel opinion, *Snyder v. Principi*, 15 Vet.App. 285, 296-98 (2001) [hereinafter *Snyder II*], deals adequately with these contentions.

Since the Secretary's motion was filed, however, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) affirmed (as modified) our opinion in *Scates v. Gober*. *Scates v. Principi*, ___ F.3d ____, ____, No. 01-7033, 2002 WL 391491, at *8 (March 13, 2002). In that opinion, the Federal Circuit stated that "[t]he line between (1) entitlement to and (2) reasonableness and excessiveness of attorney fees may not be as clear and bright as the Veterans Court believed" and that "it is unclear that this case involves solely entitlement to, rather than the reasonableness of, an attorney fee." *Id*. at ____, 2002 WL 391491, at *5. Nonetheless, the differences between entitlement and reasonableness seem quite clear on the face of the statute. 38 U.S.C. § 5904(c). Determinations as to eligibility deal with the presence of the two factors that determine whether or not an attorney can collect *any* fee for representation before VA; in order to be eligible to collect any such fee (1) the fee must not pertain "to services provided before the date on which the Board of Veterans' Appeals first makes a final decision in the case"; and (2) "[s]uch a fee may be charged, allowed, or paid in the case of services provided after such date only if an agent or attorney is retained with respect to such case before the end of the one-year period beginning on that date." 38 U.S.C. § 5904(c)(1). The reasonableness or excessiveness of the fee, on the other hand, deals with the *amount* of the fee that the attorney seeks to collect. *See* 38 U.S.C. § 5904(c)(2). What we held in *Snyder II* was that "section 5904(c)(2) requires that determinations of eligibility (which, under *Scates* [*v. Gober*, 14 Vet.App. 62, 64 (2000)], must be done by the [VA regional office (RO)] in the first instance) are a prerequisite for any Board review of the reasonableness of a direct-payment fee agreement." *Snyder II*, 15 Vet.App. at 297. We thus recognized the sequentiality of these two distinct steps, i.e., it is inappropriate for the reasonableness or excessiveness of a fee to be determined under section 5904(c)(2) before a VARO makes the threshold determination of the representative's eligibility under section 5904(c)(1) to collect any fee. Thus, despite the Federal Circuit's apparent lack of clarity on this point, entitlement to any fee and the reasonableness or excessiveness of the fee sought are, indeed, quite separate and distinct issues.

In any event, as to whether the BVA can exercise original jurisdiction under section 5904(c)(2) where an RO has not made any determination as to eligibility, in *Scates* the Federal Circuit stated that (1) there was an independent basis for its concluding that the RO was "the appropriate agency initially to decide [the] attorney fee claim", *Scates v. Principi*, ___ F.3d at ____, 2002 WL 391491, at *6, and (2) that section 7104(a) might provide a basis for the BVA to exercise original jurisdiction without the need for a case to originate in an RO (the Federal Circuit does not address *this Court's* jurisdiction under section 402 of the Veterans' Judicial Review Act, Pub. L. No. 100-687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402], in terms of there having to be a Notice of Disagreement filed after November 17, 1988, as to an RO determination, a requirement repealed on December 27, 2001, as to pending and future claims for VA benefits, Veterans Education and Benefits Expansion Act of 2001, Pub. L. No. 107-103, § 603, 115 Stat. 976, 999). On the first point, the independent basis for affirmance (described by the Federal Circuit as an "alternative ground" for sustaining the action we had taken in *Scates*), the Federal Circuit made a judgment that an RO was the most "appropriate agency initially to decide [the] attorney fee claim", *Scates v. Principi*, ___ F.3d at ____, 2002 WL 391491, at *6. On the facts of *Snyder II*, I would reach the same conclusion, i.e., that the RO is the most appropriate forum to adjudicate the presence of the two factors, described above, that must be addressed in order to decide the issue of Mr. Snyder's eligibility to collect any fee. However, because the Federal Circuit merely raised a question about this Court's reasoning in *Scates* (and did so, I believe, based on a misunderstanding of the distinction between entitlement to a fee and the reasonableness or excessiveness of a fee), and did not specifically reject our conclusion, I believe that our *Scates* opinion retains its vitality as support for our actions in *Snyder II*.

2

### I. *Secretary's Donovan Argument*

Initially, the Secretary makes a procedural contention. He states that the Court "did not act on the Secretary's alternative motion for full Court review" (Panel Reconsideration Motion (Mot.) at 1), and argues that that motion is still pending before the Court because the Court, according to the Secretary's argument, has not granted the entire relief sought in the Secretary's motion for panel reconsideration (Mot. at 1-2). In support of this argument, the Secretary cites *Donovan v. West*, 12 Vet.App. 500, 500 (1999) (en banc order), for the following: "Because the opinion in *Donovan II* [(which had granted reconsideration but had held that the *Donovan I* opinion remained valid and controlling and would not be withdrawn)] did not grant the entire relief sought in the Secretary's motion for reconsideration, the alternative motion for a full Court decision was circulated to the full Court". Although the comparison between *Donovan* and the instant case might seem apt at first blush, there is a critical difference in ***content***, in terms of the relief sought, between the motion for panel reconsideration in *Donovan* and the one in this case.

In *Donovan*, the Secretary moved "for reconsideration of the . . . panel decision to the extent that the Court held that a veteran may appeal to the Board[,] and then [to] the Court, a VA decision not to accept a deed in lieu of foreclosure." *Ibid.* The Secretary then stated that "[s]hould the motion for reconsideration be denied in whole or in part, the Appellee respectfully moves for a full Court review of the panel decision". *Ibid.* In the instant case, the Secretary stated ***first*** his alternative motion for a full-Court decision, and then, very generally, stated that "the panel relied upon decisions of the Comptroller General which are no longer good law, failed to consider applicable Supreme Court precedent concerning sovereign immunity, and apparently misapplied the Court's own prior caselaw." Mot. at 2. Notably lacking in the Secretary's panel-reconsideration motion here is any direct indication of what action the Secretary was urging the Court to take, outside of a ***reconsideration*** of several arguments he raised. This, in fact, the Court did; our reconsideration opinion addressed each of the arguments raised by the Secretary. *See Snyder II*, 15 Vet.App. at 289-99. Indeed, we revised our analysis to comport with a point raised by the Secretary regarding the nonbinding nature of decisions of the Comptroller General. *See id.* at 291-93. In the instant motion, however, the Secretary is making a logic leap that goes one step beyond the arguments raised either in his instant motion or in his motion for panel reconsideration. He is ***assuming*** that the arguments he wants the Court to reconsider will, if the Court agrees with the position of the Secretary, be ***outcome determinative***. However, as the Court's previous opinion in this case demonstrates, *see id.* at 291, that is not necessarily so. It is not sufficient for the Secretary merely to state a legal argument without providing an analysis as to how it changes the outcome of the case. When the Secretary seeks a change in ***outcome***, he should state this explicitly, and not expect the Court to connect the dots for him.

In the motion for panel reconsideration in this case, the Secretary asked the Court to reconsider several legal arguments. This was the totality of the "relief requested". Although the Secretary may ***believe*** that a change in outcome would have been the natural result of such "reconsideration", or he may ***believe*** that a request for a change in outcome should have been inferred by the Court, he failed to state such arguments explicitly. It is not this Court's function to rewrite the Secretary's motion for him. In view of the foregoing, I believe that the panel correctly did not

forward this matter to the full Court for consideration, because, in line with the Secretary's motion, the panel had granted in full his request that we "reconsider" several points of law. Nonetheless, I favored treating the Secretary's motion for a full-Court decision as timely filed and proceeding to consider it en banc.

## II. Secretary's "Erroneous Payment" Argument

The Secretary reiterates his argument, made twice before in this case, *see Snyder v. Gober*, 14 Vet.App. 154, 164-65 (2000)[hereinafter *Snyder I*]; *Snyder II*, 15 Vet.App. at 291-95, that the Department of Veterans Affairs (VA) cannot make any payment from past-due benefits of "attorney fees" to the attorney in this case, because 100% of such benefits have already been disbursed to the veteran. *See* Full-Court Mot. at 5-7. The Secretary makes this argument again, despite the fact that four judges[2] (two-thirds of the Court) have already twice agreed with the holding that "that where VA makes an erroneous payment to a particular beneficiary, that payment in no way impairs its authority and obligation to pay from the compensation and pension account the amount that is owed to the correct beneficiary." *Snyder II*, 15 Vet.App. at 292; *see also Cox IV*, 15 Vet.App. at 281-83; *Snyder I*, 14 Vet.App. at 164-65; *Cox v. Gober*, 14 Vet.App. 148, 152-54 (2002). The Secretary attempts to overcome this holding by describing it as a "legal fiction", Full-Court Mot. at 6, and by stating that "the Court's assertion that there are an additional twenty percent of past-due benefits that 'remain[] *undisturbed* in the compensation and pension account' is factually inaccurate", Full-Court Mot. at 7. In support, the Secretary points not to some overlooked statutory provision or a regulation adopted after public notice and opportunity for comment, but to "the procedures outlined in the VA Adjudication and Procedure[] Manual M21-1[ (Manual M21-1)], Part III, Ch. 12". *Ibid.*

The Secretary attempts to use these manual provisions to show that VA's normal procedures belie the analysis made by the Court. He states:

> Pursuant to Manual M21-1, Part III, Ch. 12.46, [paragraphs] (a) and (c), when presented with a potential attorney direct payment situation, VA will determine the total past-due benefits due to be awarded, will obtain 100 percent of that amount from the Compensation and Pension account, and will immediately release to the claimant eighty percent of that award. The withheld twenty percent is processed as an "06B fiscal transaction," called a "31J deduction," and "[t]he amount of the 31J deduction (twenty percent of the retroactive payment) **will be paid to the Agent Cashier**" who, "[u]pon reciept," deposits the amount into the station's suspense account "until BVA determines the amount of the retroactive payment, if any, due the attorney." M21-1, Part III, Ch. 12, [paragraph] (c)(2) (emphasis added) . . . .

> Put simply, the Court's assertion that there are an additional twenty percent of past-due benefits that "remain[] *undisturbed* in the compensation and pension

---

[2] Actually, *five* judges have agreed to this reasoning; Chief Judge Nebeker was part of the panel that decided *Cox v. Gober*, 14 Vet.App. 148 (2000) (per curiam) [hereinafter *Cox III*]; he retired shortly after the issuance of the per curiam opinion in that case. He was replaced on that panel by Judge Greene, who is also part of the panel in this case.

4

account" is factually inaccurate. The Secretary was authorized to withdraw from that account *only* the amount of past-due benefits to which the veteran was entitled, and VA can withdraw no more, regardless of whether the attorney is ultimately found, pursuant to section 5904, to have been entitled to any attorney fees out of any past-due benefits awarded.

Full-Court Mot. at 7-8. This argument is flawed both on its face and in its premise.

On its face, this argument depends on the same type of logic that characterized the Secretary's *Donovan* argument, discussed in part I., *supra*. Although the Secretary discusses VA procedures for segregating the withheld 20% of the past-due benefits, he ***does not point to any authority for the premature disbursement of that withheld amount***. *See* Mot. at 3-15. The Manual M21-1 provisions that he cites are, in fact, fully in concert with our prior opinions in this case; the withheld 20% of past-due benefits is indeed to be held until "the amount of the retroactive payment, if any, due the attorney" is determined by the Department. *See* Mot. at 7-8. In this case, however, that withheld amount was "***erroneously*** released to the veteran". *Snyder II*, 15 Vet.App. at 289 (emphasis added). It was this erroneous release of funds that led the Court to note that, "as is inherent in 38 U.S.C. § 5904(d)(2)(A) . . . and in 38 C.F.R. § 20.609(h) . . . , the Secretary is ***obligated*** to withhold and pay this amount." *Snyder II*, 15 Vet.App. at 294-95. The Secretary's Manual M21-1 new arguments are thus unavailing because they do not deal with the crucial fact under examination, namely, the erroneous release of funds to the veteran without any statement of legal justification for that action. The Secretary has shown only that VA procedures comport with the statute, with the regulations, and with *Snyder II*.

Even assuming that the Secretary had made a cogent argument as to why the Manual M21-1 provisions he cites would create a result different from that described by the Court, the premise of this argument would still be flawed. That is because the Secretary is pointing to provisions of an internal manual to show that he should be allowed to act in contravention of the statute, the regulations, and this Court's caselaw. Clearly, VA internal procedures cannot trump these higher authorities. The Secretary's argument in this regard is little different from his argument in the motion for panel reconsideration, to which the Court responded as follows:

> Therefore, in order to accept the underlying assumption in the Secretary's argument, we would have to endorse the view that the Secretary released the veteran's withheld funds in a manner other than as directed by the veteran ***and therefore in contravention of the statute and regulation***. In other words, to agree with the Secretary's argument, the Court would have to accept the position that the Secretary, in these situations, acted contrary to the law as to his section 5904(d) obligation, whereas under the theory in *Snyder I* the Court is making no determination or assumption about the legality of the payment to the veteran of an amount equal to the withheld amount.

*Id.* at 295. The Secretary's arguments are no more persuasive now, with a citation to the Manual M21-1 for support, than they were in any of their previous incarnations.

### *III. Secretary's Section 5314 Argument*

The Secretary also argues that VA *cannot* pay the attorney because 38 U.S.C. § 5314 would conflict in this context with 38 U.S.C. § 5904(d)(3). In full, the Secretary states as follows:

> The Court states that VA paid only eighty percent of past-due benefits (unless, of course, the attorney is later not found to be entitled to any fees, in which case VA paid 100 percent of past-due benefits), and may recoup the additional twenty percent that the veteran received, pursuant to 38 U.S.C. § 5314. ***Snyder II***, [15 Vet.App. at 295]. Section 5314 provides that "the Secretary **shall** . . . deduct the amount of the indebtedness of any person who has been determined to be indebted to the United States by virtue of such person's participation in a benefits program administered by the Secretary **from future payments** made to such person under any law administered by the Secretary." 38 U.S.C. § 5314(a) (emphasis added). If, pursuant to the Court's rationale in ***Snyder I & II***, the VA Regional Office (RO) subsequently concludes that the attorney is entitled to all or some of the twenty percent of past-due benefits that have been withdrawn from the Compensation and Pension account and paid to the veteran, the Secretary will be required to follow the direction of section 5314. Yet, 38 U.S.C. § 5904(d)(3) states: "**In no event** may the Secretary withhold for the purpose of . . . payment [of any attorneys' fee] any portion of benefits payable for a period **after the date of the final decision of the Secretary, the Board of Veterans' Appeals, or Court of Appeals for Veterans Claims making (or ordering the making of) the award**." 38 U.S.C. § 5904(d)(3) (emphasis added). Thus, section 5904 appears to preclude VA, in this instance, from following section 5314, irrespective of the Court's apparent statements to the contrary.

Full-Court Mot. at 8 (emphasis in original). Again, the Secretary's arguments fall far short of the mark.

First, the Secretary appears to imply that the Court gave him some directive to ensure compliance with section 5314. That is not correct; as to section 5314, the Court stated only the following:

> [U]nder the theory in *Snyder I* the Court is making no determination or assumption about the legality of the payment to the veteran of an amount equal to the withheld amount. That is a matter between the Secretary and the veteran. *Cf.* 38 U.S.C. §§ 5302(a) (providing that waiver of collection of overpayment may be granted "whenever the Secretary determines that recovery would be against equity and good conscience"), 5314 (providing for declaration of overpayment and offset against other due benefits).

*Snyder II*, 15 Vet.App. at 295. In this only passage in the opinion that cites to section 5314, the Court passed no judgment on whether or how the Secretary should apply section 5314 in this case.

Furthermore, the citation of section 5302(a) shows that the Secretary is not correct in stating that "the Secretary will be required to follow the direction of section 5314" in the event that he makes any payment to the attorney; section 5302(a) clearly provides an alternative that would allow the Secretary to cut this asserted Gordian knot.

Second, the Secretary's argument here ignores one of the essential precepts of *Snyder II*: The fact that the twenty-percent of past-due benefits set aside for potential payment as attorney fees remains ***undisturbed***, whereas the amount accidentally disbursed to the veteran was not part of the veteran's past-due benefits. *Snyder II*, 15 Vet.App. at 291-92, 294-95. The Secretary's argument here cannot succeed unless he can successfully demonstrate that the Court's holding on this point was incorrect. As shown above, he has failed to carry that burden. The Secretary posits that he would be prohibited from following section 5314 (which obligation he again fails to mention could be obviated by section 5302(a)) because section 5904(d)(3) prohibits him from withholding any portion of future benefits for the payment of attorney fees. Of course, to the extent that the attorney in this case is found to be eligible for fees, he is, pursuant to *Snyder II*, 15 Vet.App. at 294-95, to be paid this amount ***directly*** from the undisturbed amount in the compensation and pension account. The Secretary would thus transmute into an attorney's fee any amount that VA might attempt to recoup from the veteran in light of its erroneous disbursement to him. However, any such amount would be paid by the veteran to the Secretary and would be collected in a VA effort to protect the taxpayers by recouping an amount erroneously released to the veteran. Even drawing the connection that the Secretary seems to be advocating – that such amount would ***replace***, in the compensation and pension account, the amount paid to the attorney – would still fail to transform such amount into a payment of an attorney's fees; it would be, again, the recoupment by VA of an amount that it had erroneously dispersed. The Secretary, in essence, is attempting to place two amounts side by side, note the similarity in amount of funds, and have us declare them to be one and the same. However, even the fact that an apple and an orange may be the same size and same mass does not mean that we could accurately call the apple an orange or vice versa.

### IV. Secretary's "Money-Mandating" Argument

The Secretary also presents one argument that he has not presented previously in this case.[3] He places this argument under a section titled: "The Court's Rationale Violates Sovereign Immunity

---

[3] Of course, the Secretary should not be presenting such arguments for the first time in his motion for a full-Court decision. His presentation of these arguments at this stage is even more problematic because over the years that this litigation has been before the Court (the companion case of *Cox IV* began as *In the Matter of Fee Agreements of Smith, Cox, and Wick*, 4 Vet.App. 487, in 1993), he has had numerous opportunities to make this argument. The Secretary should need no reminder of the Court's longstanding policy to discourage piecemeal litigation. *See Burton v. Principi*, 15 Vet.App. 276, 277 (2001) (per curiam order) ("[w]e should not encourage the kind of piecemeal litigation in which the appellant here has engaged"); *Black v. West*, 11 Vet.App. 15, 16 (1998) (per curiam order) (Steinberg, J., dissenting) (raising contention for first time at reconsideration stage is normally an "undesirable practice" that may "hinder[] the decision-making process" and "raise[] the undesirable specter of piecemeal litigation" (quoting *Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990))). However, as I stated at the outset of this statement, I have addressed this argument because of the desirability that the record of this Court's consideration be as complete as possible.

Because It Impermissibly Requires That Section 5904(d) Be Considered a Money-Mandating Statute"; he frames the argument as follows:

> The Court's finding that the Secretary is 'obligated' to withhold and pay the agreed-upon fee directly to the attorney and that duty also creates a corresponding 'right' for the attorney to collect that fee . . . in addition to being inaccurate as a matter of statutory interpretation, violates well-established principles of sovereign immunity.

Full-Court Mot. at 9. It is difficult to trace exactly how the Court's putative implicit finding that section 5904(d) is a money-mandating statute would violate *sovereign immunity*. The Secretary seems to link that contention to his argument by stating the following: (a) Section 5904(d) cannot be a money-mandating statute because it is permissive rather than mandatory; (b) the money-mandating authority the Court relies upon therefore comes from 38 C.F.R. § 20.609(h); (c) an attempt to elevate the regulation to the level of a money-mandating *statute* is an attempt to elevate the Secretary's rulemaking authority to the authority of Congress to enact statutes, including money-mandating statutes, *see* Full-Court Mot. at 13; and (d) because the regulation cannot be a statute, there is no waiver of sovereign immunity here (this last step, which actually ties the money-mandating argument back to the original sovereign immunity argument, is not stated anywhere in the Secretary's motion; however, without drawing this conclusion, there is simply no way to synthesize logically the Secretary's contentions on this point). A brief examination of the caselaw that the Secretary cites in support of this argument reveals its fundamental weakness.

The Secretary cites *Khan v. United States*, 201 F.3d 1375, 1378 (Fed. Cir. 2000), for the proposition that a money-mandating statute is one that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." It is important to note at the outset that the cases cited by the Secretary involve attempts to receive *damage* awards from the United States, whereas our two pending cases involve attempts to receive amounts due and owing to individuals that were wrongly paid out by the United States to the incorrect recipients. Indeed, the definition of "money-mandating statute" that the Secretary points to in *Khan* supports the notion that those statutes relate to the payment of *damages*. The Secretary nowhere explains how a *damages* statute is applicable in the instant context. Nonetheless, even assuming, arguendo, that the concept of a money-mandating statute were appropriate here, the Secretary neglects the rather important point that the Federal Circuit, in *Khan*, clearly recognized that the money-mandating provision *does not* have to be contained in a statute. The *Khan* opinion states: "In other words, the plaintiff' must assert a claim under a separate money-mandating *constitutional provision, statute, or regulation*, the violation of which supports a claim for damages against the United States.' *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998)." *Khan*, 201 F.3d at 1378. Thus, even if the Secretary were correct that section 5904(d) is discretionary (for which he provides no precedential support, and which proposition, indeed, seems to be without any affirmative support in our

8

caselaw[4]), and that the money-mandating authority here arises instead out of 38 C.F.R. § 20.609(h), no support is presented for the unstated assumption that such money-mandating powers cannot arise out of a regulation.

Even assuming, arguendo, that the Secretary could overcome the above-noted flaws in his argument on this point, he cannot overcome the fact that he appears to have completely misapprehended the nature of a "money-mandating" provision. First, the Secretary has provided no evidence whatsoever that the concept of a "money-mandating" statute is applicable or binding under title 38. None of the cases the Secretary cites pertains to an action under title 38[5], and his argument merely *assumes* such applicability.

Second, the Secretary seems to suggest that a waiver of sovereign immunity is somehow related to a money-mandating provision (and therefore such a provision, because of the waiver of sovereign immunity, must arise from a statute and not a regulation). The U.S. Supreme Court has stated, in the context of litigation under the Tucker Act[6], as follows:

> For decades, this Court consistently interpreted the Tucker Act as having provided the consent of the United States to be sued *eo nomine* for the classes of claims described in the Act. . . . In at least two recent decisions this Court explicitly stated that the Tucker Act effects a waiver of sovereign immunity. . . .
>
> . . . .
>
> It nonetheless remains true that the Tucker Act "'does not create any substantive right enforceable against the United States for money damages.'" . . . A *substantive right must be found in* some other source of law, such as "the Constitution, or any Act of Congress, or *any regulation of an executive department*." 28 U.S.C. § 1491.

---

[4] It should be noted that this Court has specifically *refused* to rule on whether the statute alone "requires, or merely give discretion to, the Secretary to carry out the withhold-and-pay provisions of the statute", *Cox III*, 14 Vet.App. at 152.

[5] Indeed, each of the cases cited by the Secretary is either a decision of the U.S. Court of Federal Claims (*Hoch v. United States*, 33 Fed.Cl. 39 (1995); *Eastport Steamship Corp. v. United States*, 372 F.2d 1002 (Ct. Cl. 1967)) or an opinion of the U.S. Court of Appeals for the Federal Circuit arising out of an appeal of a decision of the U.S. Court of Federal Claims (*Khan v. United States*, 201 F.3d 1375 (Fed.Cir. 2000); *Huston v. United States*, 956 F.2d 259 (Fed.Cir. 1992); and *Millard v. United States*, 916 F.2d 1 (Fed.Cir. 1990)). In either case, all of these cases appear to arise under the authority of the Tucker Act, *see* note 6, *infra*. Indeed, the Secretary has not presented any evidence that the concept of a money-mandating provision applies anywhere *other* than in a Tucker Act proceeding.

[6] The Tucker Act, 28 U.S.C. § 1491, is titled "[c]laims against United States generally; actions involving Tennessee Valley Authority". It is codified under chapter 91 of title 28, which pertains to the U.S. Court of Federal Claims.

*United States v. Mitchell*, 463 U.S. 206, 216 (1983) (emphasis added). As the Supreme Court points out, in cases under the Tucker Act, which forms the predicate for *each* of the cases cited by the Secretary, the money-mandating provision goes not to the issue of sovereign immunity (which is already waived by way of the Tucker Act), but to the issue of a substantive right to payment. Again, as the Supreme Court points out in *Mitchell*, such a money-mandating provision and its substantive right can arise as well from a regulation as from a statute. Thus, even if we were to find that (a) the principle of a money-mandating provision applies outside the context of the Tucker Act; (b) that this principle applies under title 38; (c) that section 5904(d) is permissive rather than mandatory; (d) that section 5904(d) thus cannot be a money-mandating statute; and (e) that, therefore, the money-mandating authority that the Court relies upon comes from 38 C.F.R. § 20.609(h), the Secretary *still* would not have demonstrated that such an action was "impermissible", let alone that it constituted a violation of sovereign immunity. Regrettably, in my view, the presentation of such a poorly-constructed argument, which would fail *even if* all of its predicate assumptions proved true, is not only unpersuasive but borders on being frivolous. *Cf.* 38 U.S.C. § 7265 (contempt authority of the Court); U.S. Vet. App. R. 38 ("[i]f the Court determines that an appeal is frivolous, it may enter such order as it deems appropriate").

### *V.  Conclusion*

For all the above reasons, I voted, as did all of my brethren on the Court, to deny en banc consideration in this case. Notwithstanding that the Secretary's substantive arguments are unpersuasive, I thought it best that they not be rejected silently.

10