Hanson P. AGWIAK, ALF Skaflestad, Bruce Christian, Carl Fanning, Clyde Christman, Darrell Hobson, Darryl Stevens, Gary Wall, James Russell, Jay Escott, Jim Norris, John Nelson, John Williams, Maurice Ivanoff, Michael Foster, Pat Easter, Richard Hendricks, Steve Hobson, Steve Munn and William Bradford, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 02–5184.

United States Court of Appeals,
Federal Circuit.

Oct. 30, 2003.

David H. Shoup, Tindall Bennett & Shoup, of Anchorage, AK, argued for plaintiffs-appellants.

Elizabeth G. Candler, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were David M. Cohen, Director; and Kathryn A. Bleecker, Assistant Director.

Before MICHEL, DYK and PROST, Circuit Judges.

DYK, Circuit Judge.

Hanson P. Agwiak, Alf Skaflestad, Bruce Christian, Carl Fanning, Clyde Christman, Darrell Hobson, Darryl Stevens, Gary Wall, James Russell, Jay Escott, Jim Norris, John Nelson, John Williams, Maurice Ivanoff, Michael Foster, Pat Easter, Richard Hendricks, Steve Hobson, Steve Munn, and William Bradford (collectively "plaintiffs") appeal the Court of Federal Claims' grant of the government's motion for summary judgment. *Agwiak v. United States*, No. 98–786C (Fed.Cl. Aug. 30, 2002). We affirm the Court of Federal Claims' decision that the plaintiffs were not entitled to per diem compensation, but we vacate and remand with respect to the plaintiffs' claim for remote duty pay.

## BACKGROUND

The plaintiffs were employed at various times by the Office of Environmental Health and Engineering, Alaska Area Native Health Service, Department of Health and Human Services ("the agency"). The agency hired the plaintiffs to perform construction work in sparsely populated and undeveloped areas of western Alaska that were difficult to access. Beginning in 1993, the plaintiffs' positions were converted to seasonal appointments. The agency's announcement for the positions the plaintiffs held read: "Extensive travel to communities throughout Alaska is required, often in small unpressurized aircraft. Normally long periods of residence in small bush communities will be required." (App. at 18.) The plaintiffs lived at each successive worksite. Although the

agency did not promise to provide housing at the worksites for the plaintiffs, it typically made arrangements for nearby housing, which was often rudimentary. Every time one of the plaintiffs was assigned to a different construction project, the agency made that project his permanent duty station. Assignments lasted from several weeks to over a year. The plaintiffs received neither per diem nor remote duty pay while they were at their duty stations, but they received per diem pay "if [they] were away from the worksite and away from [their] homes while working." (App. at 62.)

In early 1998, a tribal organization elected to take over the construction projects for which the plaintiffs were employed. *See Thompson v. Cherokee Nation of Okla.*, 334 F.3d 1075, 1079–81 (Fed.Cir. 2003) (discussing the Indian Self Determination and Education Assistance Act, Pub.L. No. 93–638, 88 Stat. 2203 (1975) (codified as amended at 25 U.S.C. §§ 450–450n (2000))). The plaintiffs, most then still employed by the agency,[1] were subjected to reduction-in-force actions.

On October 13, 1998, the plaintiffs brought suit in the Court of Federal Claims. They sought, *inter alia*, per diem pay pursuant to 5 U.S.C. § 5702 for the period of their employment. On March 7, 2000, the plaintiffs, with leave of the Court of Federal Claims, amended their complaint to include an alternative claim for remote worksite pay pursuant to 5 U.S.C. § 5942(a). On April 27, 2000, the plaintiffs moved for partial summary judgment with respect to their alternative per diem and remote worksite pay claims. On June 30, 2000, the government opposed the plaintiffs' motion and cross-moved for summary judgment. The government argued that, because each worksite to which one of the

plaintiffs had been assigned was designated by the agency as that plaintiff's permanent duty station, the plaintiffs were not entitled to per diem pay. With respect to remote duty pay, the government argued that 5 U.S.C. § 5942 applies "only to instances where an employee's daily commute to and from his work-site results in hardship." (Gov't Opp'n at 19.)

The Court of Federal Claims granted summary judgment for the government, holding that the agency's "system of successive transfers upon completion of projects was a permissible personnel practice which does not produce liability for per diem payments." *Agwiak*, slip op. at 4. With respect to remote duty pay, the court held that, "[a]s plaintiffs' duty stations were their remote worksites, commuting, as such, did not occur, and no basis for liability pursuant to 5 U.S.C. § 5942 has been established." *Id.* The plaintiffs timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

■ We review the Court of Federal Claims' grant of summary judgment without deference. *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed.Cir.2003).

### I

■ This case presents two issues. The first of these is whether the Court of Federal Claims properly held that the plaintiffs were not entitled to per diem compensation because each of the duty stations to which they were assigned was a permanent duty station. In this respect, we agree with the Court of Federal Claims.

The statute that authorizes per diem payments provides, in relevant part:

Under regulations prescribed pursuant to section 5707 of this title, an employee,

---

1. Alf Skaflestad and Carl Fanning had previously retired. John Williams had previously

been dismissed.

when traveling on official business away from the employee's designated post of duty ... is entitled to ... a per diem allowance....

5 U.S.C. § 5702(a)(1) (2000). "The purpose of per diem is to reimburse an employee for meals and lodging while on temporary duty while he also maintains a residence at his permanent duty station." *Matter of: Frederick C. Welch,* 62 Comp. Gen. 80, 84 (1982). It is not contested that the agency successively changed the plaintiffs' permanent duty stations each time they were assigned to a new work area. The plaintiffs contend, however (as best we understand it), that if an employee is assigned to a duty station for a short period of time here periods ranging from a few weeks to more than a year (1) that station cannot be a permanent duty station; (2) the agency must designate some other place as the permanent duty station; and (3) per diem compensation must be paid while the employee is away from that permanent duty station.

In this respect, plaintiffs rely on a decision by the Comptroller General in *Comptroller General Warren to the National Housing Administration,* 23 Comp. Gen. 162 (1943) (*"Warren"*). In *Warren,* the Comptroller General concluded that, because it is necessary "to designate some place as the headquarters or official station of itinerant employees," the "official station" for itinerant employees ordinarily should be the "central place from which their orders emanate and to which their reports go for consideration and on the basis of which administration action is taken." *Id.* at 164. That decision is of course not binding on us, *see Cherokee Nation of Okla.,* 334 F.3d at 1084, and it is distinguishable in any event. In *Warren,* the itinerant employees were "expected to travel continuously" within a region to which they were assigned or among several such regions. *Id.* at 162. In contrast,

the plaintiffs in this case lived at a particular worksite for the duration of their assignment to the site. Although their assignments were often brief, the plaintiffs were not traveling "continuously." Furthermore, unlike in this case, the agency in *Warren* sought to designate no official station for the employees, designating them instead as a special class of "itinerant employees." *Id.* Here, the agency continually updated the plaintiffs' permanent duty stations as they were reassigned. Thus, the employees always had "some place" as their permanent duty station, unlike the situation in *Warren.*

■ We hold that an agency can designate a station as a permanent duty station, even if an employee is assigned to it for only a short period, so long as the employee is not assigned to another permanent duty station. Under these circumstances, the plaintiffs were not traveling "away from the employee's designated post of duty," 5 U.S.C. § 5702(a)(1), and they were not entitled to per diem compensation.

## II

This leads then to the plaintiffs' second contention—that if these locations were the employees' permanent duty stations, they are entitled to remote duty pay under section 5942, which provides:

[A]n employee of an Executive department or an independent establishment who is assigned to duty, except temporary duty, *at a site so remote from the nearest established communities or suitable places of residence as to require an appreciable degree of expense, hardship, and inconvenience,* beyond that normally encountered in metropolitan commuting, on the part of the employee in commuting to and from his residence and such worksite, is entitled, in addition to pay otherwise due him, to an allowance of not to exceed $10 a day. *The allowance shall be paid under*

*regulations prescribed by the President establishing the rates at which the allowance will be paid and defining and designating those sites, areas, and groups of positions to which the rates apply.*

5 U.S.C. § 5942(a) (2000) (emphases added). The Court of Federal Claims, adopting the government's arguments, rejected this contention on the ground that "compensation pursuant to 5 U.S.C. § 5942 depends upon establishing that the commuting to and from the worksites required '... an appreciable degree of expense, hardship, and inconvenience, beyond that normally encountered in metropolitan commuting.'" *Agwiak,* slip op. at 4 (quoting 5 U.S.C. § 5942). Because "commuting, as such, did not occur" between the plaintiffs' duty stations and the remote worksites, the court held that "no basis for liability pursuant to 5 U.S.C. § 5942 has been established." *Id.* On appeal, the government candidly admits that this was erroneous. Neither the statute nor the regulations require that the employee be engaged in daily commuting. Rather, the statute is directed to a situation where commuting is impractical or particularly onerous. Thus, section 591.306(a) of the Code of Federal Regulations authorizes an allowance rate when "the employee remains at the worksite at the direction of management because daily commuting is impractical." 5 C.F.R. § 591.306(a) (2003). The regulations also provide:

> [A] duty post shall be determined to be a remote duty post for [remote duty pay] eligibility purposes when ... [d] *aily commuting is impractical* because the location of the duty post and available transportation are such that *agency management requires employees to remain at the duty post for their workweek as a normal and continuing part of the conditions of employment.*

*Id.* § 591.304(a)(2) (2003) (emphases added).

## III

### A

Nonetheless, the government urges that, even though the ground for the Court of Federal Claims' decision was incorrect, the Court of Federal Claims lacked jurisdiction because the statute and regulations are not money-mandating. Rather, the government argues, the regulations "merely reflect [the Office of Personnel Management's] delegation of authority to the agencies." (Gov't Br. at 16.) We disagree. The Tucker Act, 28 U.S.C. § 1491 (2000), constitutes a waiver of sovereign immunity with regard to claims over which the Court of Federal Claims has jurisdiction. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). However, the Tucker Act alone "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Instead, in a context such as this, another statute or regulation must be money-mandating to create such a substantive right against the government. *Mitchell,* 463 U.S. at 218, 103 S.Ct. 2961; *Martinez v. United States,* 333 F.3d 1295, 1302–03 (Fed.Cir.2003) (en banc). The Supreme Court recently reaffirmed that a statute is money-mandating "if, but only if, it can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) (internal citations omitted). "It is enough ... that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be lightly inferred, a fair inference will do." *Id.* (internal citation omitted). Further-

more, a statute can be money-mandating even if the government enjoys some discretion under it. *Bradley v. United States,* 870 F.2d 1578, 1580 (Fed.Cir.1989) ("There are limits, of course, to the discretion inherent in [the prevailing pay rate statutes].... Inasmuch as discretion is not unlimited, the statute must be deemed to be a pay-mandating statute." (alteration in original) (internal citation omitted)).

■ The relevant statute in this case provides that an employee at a remote duty site "is entitled" to the remote duty allowance. 5 U.S.C. § 5942(a). The statute further provides that "[t]he allowance *shall be paid* under regulations prescribed by the President." *Id.* (emphasis added). We have repeatedly recognized that the use of the word "shall" generally makes a statute money-mandating. *See, e.g., McBryde v. United States,* 299 F.3d 1357, 1361 (Fed.Cir.2002); *Huston v. United States,* 956 F.2d 259, 261–62 (Fed.Cir. 1992); *Grav v. United States,* 886 F.2d 1305, 1307 (Fed.Cir.1989). Indeed, we have held that 37 U.S.C. § 204 is money-mandating, and it contains substantively identical language to the statute at issue here: "The following persons *are entitled* to the basic pay of the pay grade to which assigned or distributed," 37 U.S.C. § 204(a) (2000) (emphasis added). *See, e.g., Martinez,* 333 F.3d at 1303 (acknowledging that 37 U.S.C. § 204 is money-mandating); *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.1997) ("It is well established that 37 U.S.C. § 204 ('Pay and Allowances of the Uniformed Services') serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge.").

Moreover, the implementing regulations for section 5942(a) contain similar language. *See* 5 C.F.R. § 591.304(a) (2003) (requiring that "a duty post shall be determined to be a remote duty post" when

certain criteria are satisfied); 5 C.F.R. § 591.306(a) (2003) (requiring that remote duty pay "shall be paid to each employee with a permanent duty station at or within a remote post of duty approved under § 591.304"). We therefore hold that 5 U.S.C. § 5942(a) and its implementing regulations are money-mandating.

**B**

■ The government argues alternatively that the plaintiffs here have not shown that the duty stations have in fact been classified as remote. The government is correct that the ultimate burden of proof is on the plaintiffs, but it misconceives the standard of proof on summary judgment. Summary judgment is properly granted if "there is no genuine issue as to any material fact." CFC Rule 56(c). Whether the plaintiffs' duty stations were indeed designated remote by the agency is a material fact, and the government, as the moving party, was required to demonstrate in its motion that no genuine issue existed as to it. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Bubble Room, Inc. v. United States,* 159 F.3d 553, 561 (Fed.Cir. 1998). Here, however, the government's summary judgment motion was limited to a different issue. It sought summary judgment only on the ground that the statute did not apply to the plaintiffs because they did not commute, and the plaintiffs' opposition and the decision of the Court of Federal Claims addressed only this issue. The government made no showing that there was no genuine issue of material fact as to whether the agency had designated the plaintiffs' duty stations as remote. On remand, this issue must be addressed.

**C**

The plaintiffs also argue that, even if it turns out that the duty stations were not

designated as remote by the agency, the Court of Federal Claims should determine whether the sites should have been designated as remote sites under the criteria in section 591.304 of the regulations, which require that the agency and the Office of Personnel Management designate a duty station as remote under certain clearly defined circumstances. Section 591.304(a) provides:

[A] duty post *shall* be determined to be a remote duty post for basic allowance eligibility purposes when ... [d]aily commuting is impractical because the location of the duty post and available transportation are such that *agency management requires employees to remain at the duty post for their workweek as a normal and continuing part of the conditions of employment.*

5 C.F.R. § 591.304(a)(2) (emphases added). Furthermore, the regulations also provide:

An authorized allowance rate *shall be paid* to each employee with a permanent duty station at or within a remote post of duty approved under § 591.304, regardless of type of appointment or work schedule, only ... [when] the employee *remains at the worksite at the direction of management because daily commuting is impractical.*

*Id.* § 591.306(a) (emphases added). The plaintiffs allege that the agency required the plaintiffs to remain at their duty stations while working there and that section 591.304(a)(2) requires the agency to designate the plaintiffs' duty stations as remote duty posts and to pay the plaintiffs remote duty pay pursuant to section 591.306(a). The government apparently suggests that this claim is non-justiciable because the standards leave so much discretion to the agency. *See, e.g., Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir.1988) ("A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" (quoting *Greene v. McElroy,* 254 F.2d 944, 953 (D.C.Cir.1958), *rev'd on other grounds,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959))). We disagree. Determining whether a worksite is remote under section 591.304(a)(2) is a relatively simple matter, requiring no determinations of a discretionary nature.[2]

The factual inquiry is spelled out by the regulations. A duty post is a remote duty post if "agency management requires employees to remain at the duty post for their workweek as a normal and continuing part of the conditions of employment." 5 C.F.R. § 591.304(a)(2); *see also* 5 C.F.R. § 591.306(a). However, section 591.306(c) limits the application of the remote duty pay regulations, excluding those who reside at the remote duty post for their own convenience. Section 591.306(c) provides: "An employee who *resides permanently, or temporarily for his or her own convenience* at a remote duty post is not eligible for an authorized allowance rate during his or her period of residence." 5 C.F.R.

---

**2.** No claim is made here that the agency can be required to designate the sites as remote pursuant to 5 C.F.R. § 591.304(a)(1), which sets forth criteria for determining when a worksite is remote because it is far from "the nearest established community or suitable place of residence." 5 C.F.R. § 591.304(a)(1). Nor is a claim made that the agency can be required to designate the sites as remote pursuant to 5 C.F.R.

§ 591.304(a)(3), which states that a duty post shall be determined to be remote "on an individual location basis" when "commuting conditions result in expense, inconvenience, or hardship significantly greater that that encountered in metropolitan area commuting." 5 C.F.R. § 591.304(a)(3). Thus, we need not decide whether such claims would be justiciable.

§ 591.306(c) (emphasis added); *see also* 5 C.F.R. § 591.302(b) (2003). Therefore, those who reside at the remote duty post *"for his or her own convenience,"* 5 C.F.R. § 591.306(c) (emphasis added); *see also* 5 C.F.R. § 591.304(a)(2), as opposed to those who remain at the duty post during the workweek *at the direction of the agency,* are ineligible for remote duty pay. The Court of Federal Claims is competent to make such determinations.

On the merits, although the plaintiffs allege that there is no dispute that they remained at the worksites at the direction of the agency, rather than for their own convenience, the government disagrees. We believe that the matter should be addressed in the first instance by the Court of Federal Claims.

## CONCLUSION

For the foregoing reasons, we affirm the Court of Federal Claims' decision as to per diem compensation, and we vacate the decision with regard to the issue of remote duty pay and remand this case to the Court of Federal Claims for further proceedings. On remand, the court must determine (1) whether the worksites were designated as remote duty stations; (2) if not, whether they should have been so designated pursuant to 5 C.F.R. § 591.304(a)(2); and (3) if the sites were remote duty sites, whether the plaintiffs resided at the sites for their own convenience or whether they remained there at the direction of the agency.

*AFFIRMED–IN–PART, VACATED–IN–PART, and REMANDED.*

## COSTS

No costs.